The following is the opinion upon the questions particularly involved in this case:
The complaint in this action is for enticing *Page 250 
from the service of the plaintiff, his minor son who still owed service to him.
But to maintain an action for enticement from service, it must appear that the child apprentice or servant, was at the time in the actual service of the parent or master, and that the moving cause of desertion was the inducement held out by the defendant. If before the child apprentice or servant, had ever met or communicated with the defendant, there had been an abandonment of the service, it cannot be maintained that there was an enticement therefrom by the defendant. (Butterfield v. Ashley, 6 Cushing, 249.) The solicitation to leave must be shown. (Stuart
v. Simpson, 1 Wend., 376, 379; Blake v. Layton, 6 T.R., 221.) And there must be an actual state of service then subsisting. (Butterfield v. Ashley, 2 Gray, 254.) It appears from the testimony, that the son left his father's employ, without the father's consent, early in August 1864; and went to the provost marshal's office at Syracuse, and offered to enlist, but at the father's instance he was rejected. He then returned home, and remained a few days, and again left, finally. It was without his father's consent. It is therefore, beyond dispute that the son, of his own will, against his father's will, left the home and service of his father early in August. He was in fact enlisted, as late as Monday the twenty-ninth day of August. He did not meet, or communicate with the defendant, until the Wednesday before that, which was the twenty-fourth of that month.
It is beyond dispute then, that the leaving of the home of the father, and the desertion of the father's service, was the act of the son, before he had seen or communicated with the defendant, and of course before the defendant had offered him any inducement or solicitation. And equally certain is it, that no inducement or solicitation of the defendant caused the son to desert his father's home and service.
No action can be maintained against the defendant by the plaintiff, on the state of facts now shown, for the enticement of his child away from his service.
But there is an allegation in the complaint that the defendant *Page 251 
did unlawfully harbor and conceal the minor after his departure, and did then procure his enlistment into the army of the United States as a substitute for the defendant, with knowledge that the son was acting against the wishes of his father, and that the father was ignorant of the whereabouts of his son. This allegation is not in the form into which, with due observance to formal pleading, would be put a count or statement of a cause of action for harboring detaining and keeping a servant apprentice or child. But with our present easy and flexible system of pleading, the allegation will sustain a verdict fairly got on the proofs; more especially as there was no objection during the trial, to the introduction of any testimony that it did not square with allegations of the complaint; nor was there a motion for a nonsuit of the plaintiff, for that his testimony did not establish the cause of action in his complaint alleged.
On the question of the knowledge of the defendant that the plaintiff's son had wrongfully left the father's home and service there was a conflict of the testimony. But there was testimony tending to establish that fact, to which the jury had the right to give credence if they saw fit. And, if, under proper instructions they did give credence to it, and did find their verdict for the plaintiff, including therein a finding that the defendant acted with the knowledge above mentioned, there are facts enough in the case to entitle the plaintiff to retain the judgment he has recovered.
For it is shown that the plaintiff was the father of the minor, a lad of fifteen years of age. The plaintiff was, from this relation, and by reason of his liability for the support and maintenance of the minor, entitled to have his labor and services, or the wages paid for them. (2 Kent, 193.) The value to the plaintiff of those services was also shown. It is shown that the father had not emancipated the son, nor in any way consented to his leaving the father's service, but that the son of his own will left it. The defendant knew from the appearance and otherwise of the youth that he was a minor. He knew also, that the plaintiff was the father of *Page 252 
the lad and was living. He was chargeable with the legal inference that the plaintiff was entitled to the custody and labor and service of the boy. It is shown that the defendant took the minor into his employ, sustained him for some days, and offered and paid him money to enlist in the army, and thus become the substitute for the defendant in the military service of the federal government, and that he was active and not scrupulous in overcoming the obstacles in the way.
And then, as to the knowledge of the defendant that the son had left the service of the plaintiff wrongfully. The plaintiff, as a witness, had given testimony from which the jury could readily infer the fact of such knowledge. The defendant, as a witness, had given testimony contradicting that of the plaintiff in this respect, and contradiction to it had also been had from the testimony of another witness called for the defendant. But the jury had a right to rest upon the testimony of the plaintiff, and to discard from their belief that of the defendant and the witness called by him. And if they have found their verdict for the plaintiff, under proper instructions from the court upon this point, we must assume that they did so rest and so discard.
And in that event it would appear that the plaintiff had made out a prima facie case against the defendant, of a wrongful harboring of the minor, to the injury and damage of the plaintiff.
It remains to be seen whether any error was committed upon the trial, in the holdings of the court, to the detriment of the defendant.
The defendant offered to prove that after the death of the son the plaintiff took out letters of administration upon his estate, and in his capacity of administrator, demanded and received of the defendant the bounty money paid to the son on his enlistment, and the interest thereon. It had already appeared that the son died unmarried, without child, with no next of kin but the plaintiff, and owing but one debt of small amount. The testimony thus offered was excluded, and the defendant took his exception thereto. *Page 253 
He claims here that this act of the plaintiff was a ratification of the contract of enlistment made by the son, and that the plaintiff is estopped from asking damages from the defendant for inducing the son to make the contract, and aiding him therein. If it was a ratification of that contract, and the plaintiff could not have attained for himself the benefits of the contract save by a ratification of it, then it may be that the defendant is right in his position. The defendant cites no authorities save those in which a principal, having taken to himself the beneficial results of a contract, is held to be estopped from denying, an original authority of one acting as his agent, or a subsequent ratification of his acts; and those in which a fraud having been practiced upon a party, after knowledge of the fraud, he deals with the subject-matter of the contract, and it is held he cannot repudiate the contract, though he afterward discovers further circumstances connected with the fraud. These cases do not appear to me to be applicable to the point in hand. As a principal of his son as an agent, or of the defendant as an agent, the plaintiff could never by any ratification of the contract of enlistment, have obtained or claimed the bounty paid to his son. Had he accompanied his son to the provost marshal's office, and there have signed a consent to his enlistment, the bounty money would not have become his. It would still have remained the property of the son who enlisted; and it was the son's to the exclusion of the parent or master. (Carsan v. Watts, 3 Doug., 350 [26 E.C.L.R., 137]; U.S. v.Bainbridge, 1 Mason, 84; Kelly v. Sprout, 97 Mass., 169.) As the plaintiff did not and could not obtain this bounty as principal, it cannot be said merely from the fact that he has obtained it, that as principal he has originally authorized or subsequently ratified the contract. He obtained it in fact, as an administrator, as an officer of the law, and so far as appears from the case, he holds it as such, as the estate of his intestate.
That he may ultimately receive as his own some part, results from the operation of the law, and not from his act. He will obtain it under the statute of distributions, as the next *Page 254 
of kin of the minor. He will receive none of it as the product of the right which he had to the services of his son. He would receive it as well if his son had been an adult or emancipated. The distinction in the case lies here. In the classes of cases cited for defendant, it is the choice of the party, his volition, his affirmative act of election, and that alone as a moving cause, which fixes his position, and makes him in the one case a party to a contract, or entirely free from the matter; and in the other case, the owner of a cause of action in tort, or of one on contract.
But his act is not the moving cause in this case. Had the plaintiff been entirely quiescent, or even repellant, none the less would he have had a vested right in this bounty money on the death of his son. Had he chosen never to demand it for himself, or never to have taken out letters of administration to that end, no one else while he lived, could have done so without his consent, express or tacit. Still the right to it would have remained his, and at his decease been a part of his estate. The bounty money he obtained was not the wages of the service his son owed to him; nor was it his seeking it as such, that enabled him to obtain it. It was something other than that, which was cast upon him by the operation of the statute law, without his choice or act. In Bird v. Randall (3 Burrows, 1345), the plaintiff was defeated in an action for enticing away his servant, because he had already received in a suit against the servant, the stipulated penalty for leaving the plaintiff's service. But mark the reason of the decision. The solicitor-general for the plaintiff arguendo, conceded that if the plaintiff had once received a full satisfaction for the same thing, he could not recover a second. And the court put their judgment upon the ground, that by the recovery against the servant, he had received complete satisfaction for the injury for which in the then action, he was seeking redress against the defendant. In other words, he had sought and obtained by his own act, the same thing which he was again seeking. But such is not the case here. Therefore, *Page 255 
the testimony offered made no excuse for the defendant, and was not material. It was properly excluded.
Of like character was the testimony offered by the defendant, that the plaintiff had obtained from the United States government the arrears of pay etc. due to his son. This too, was something conferred upon the plaintiff by the operation of statute law. Had the minor lived, the plaintiff could never have successfully claimed it of the government. It was not an amount due to and received by the plaintiff as an equivalent or compensation for the loss of his son's services, to which services he was entitled as the father. It was property in general, a debt due to the estate of the minor, to which the plaintiff succeeded on the minor's death by reason of positive and specific provisions of statute law in relation to the subject. It was not a sum of money, or a benefit, or a compensation for a loss suffered or an injury sustained, which he could have sought in either one of two ways, and having chosen one he is precluded from pursuing the other. It was not the same thing nor the equivalent for the same thing, which the plaintiff now seeks from the defendant. What he claims from the defendant is his (the plaintiff's), and never was anothers. What he got from the government never was his until it was first anothers, and never could have been his until after it had been anothers. We may suggest an analogy which may make clear our view. If this boy, after leaving his father, and after colleagueing with the defendant, had gone as a passenger upon the cars of a railroad company, and had been injured under such circumstances as to render the company liable for negligence, and the plaintiff had some time after sued the company for his damages, which would have been the loss of the services of the son, and had recovered and received them, and then had sued the defendant for enticing away his child, seeking to cover the same time of the son's absence from his employ, inasmuch as the measure of his damages would have been the value of the boy's services, the defendant might have said in bar, you have already obtained your compensation *Page 256 
for the loss of service. But if the son had, being injured, sued and recovered of the company his damages, and then had died, and the father had by letters of administration taken possession of the amount, and succeeded as next of kin, could the defendant have set that up as a compensation obtained by the plaintiff for loss of service? We think not. The testimony offered was not material, either in bar of the plaintiff's action or in diminution of his damages.
We have said above, that the jury had a right from the testimony that was before them, to find that the defendant harbored the son of the plaintiff, knowing that he had wrongfully left his father's service, provided that question was committed with proper instructions.
The defendant sought to obtain from the court instructions thereon which in his view were correct. He asked for a charge, that the plaintiff was not entitled to recover, unless the jury were satisfied from the evidence, that the defendant knew that the son had left the father's service against the will of his father.
Doubtless, both in an action for enticing away a minor child, and for harboring one who has deserted his father's service, it is essential to aver and prove knowledge on the part of the defendant, that the minor owed service to the plaintiff. (2 Chitty Pl., 645, 646, and note I; Stuart v. Simpson, 1 Wend., 376.) The cases cited by the respondent's counsel as supports for the contrary proposition (5 Cow. Rep., 483; 6 J.R., 274), were actions for wages, and not for enticing away or harboring; and98 Mass. 6 was a criminal complaint, under a statute which was absolute in its terms, and precluded any excuse of want of knowledge. But as we have stated that in our opinion, the action for enticing away is not maintained by the testimony, we need consider the question immediately before us, only in reference to an action for harboring one who has abandoned service. And it is to be borne in mind that it is an action of tort. To charge the defendant, the plaintiff must establish that he acted with a knowledge of the plaintiff's rights. It was the right of the *Page 257 
defendant that the jury should have been instructed, that the plaintiff could not recover, unless it appeared from the testimony, that the defendant knew that the minor had wrongfully deserted his father's service. The request of the defendant above given, presents that point. It was error in the court not to accede to it.
Akin to this, is the offer made by the defendant to prove that when the boy engaged with him, he told him that his father was willing that he should go into the military service of the government. This was objected to on the ground that it was a declaration of the boy in the absence of the plaintiff. The objection was sustained and the defendant took his exception. Though the defendant knew that this was the son of the plaintiff, and was a minor, still if there was an honest belief on the part of the defendant, that the youth had left his father's service with his father's consent, the defendant was not liable to the plaintiff in an action of this kind. (See 6 Cush., and 2 Gray,supra.) It was material and important for the defendant, to show to the jury any fact, which would convince them that he had acted honestly. The testimony he offered would strongly tend thereto, nor was it liable to the objection made to it and sustained. The declarations of the minor, just at the inception of the arrangement between him and the defendant, were a part of the transaction. They were of the immediate circumstances of the case, and tended to show the animus of the defendant, and the influences under which he acted. They would not lessen the right of the plaintiff to the services of his son, and could not be heard to do so. But they might convince that the defendant did not purpose to impair the right. They would not have been available in an action by the father to recover the wages of the son; yet in this action, imputing and dependent upon a wrongful intention, they were competent to show that it did not exist in the mind of the defendant. So in an action by a husband against one for harboring the wife, it was held that the act of the defendant was rendered tortious or wrongful by reason of the improper or unlawful *Page 258 
motive if any, which prompted it; and that of itself it was not tortious though done without the husband's consent. It had been held in the trial court that the wife's statements to the defendant afforded him no shield whatever. But the court of review said that that could not be law. (Barnes v. Allen, 1 Keyes, 390.) In analogy with the reasoning in that case we may say, that though prima facie every father has the right to the custody over, and the labor and service of, his minor son; it is not so uncommon in this land that fathers give to their sons their time, and consent to their seeking their own subsistence before they have reached their majority, as that the declaration of a minor that his father has consented to his entering service other than his own, should not ordinarily gain belief and induce honest action. If one may believe a wife's story that her husband's cruelty has become so intolerable that she is compelled to seek shelter from it, and the belief honestly entertained protect from recovery for the act of giving shelter; one may also believe a son's story that his father has told him that he may seek his own fortune, and the belief honestly entertained protect from an action of tort for enticing or harboring from service.
We are of the opinion that the court erred in the rejection of the testimony offered.
The defendant requested the court to charge, that to support this action the plaintiff must satisfy the jury that the defendant when he put the plaintiff's son into the service, was doing so against the plaintiff's consent. If by this was meant (as in criticism upon it is suggested) that the jury must find that there was no cause of action unless it appeared that the plaintiff's consent had been in fact asked, and in fact refused, it was a proposition clearly untenable. If it is meant by it that in the absence of dissent expressed to the defendant, he had a right to infer assent, then it is untenable. For the legal and natural inference is, that the father would hold on to that which is his right, and that inference must be repelled by some fact or circumstance in opposition to it, to warrant any honest action contrary to it. If it was meant *Page 259 
that the court might instruct the jury that they were at liberty to infer a consent on the part of the plaintiff, then it was wrong. For there is nothing in the testimony taken as a whole on which to base such a request. That shows beyond dispute that the son left his father's service of his own head, without his father's consent or knowledge at the immediate time, and in face of his disapprobation of his enlistment.
Some stress seems at the trial, to have been put upon the matter of the age, apparent or actual, of the boy. While it is conceded that he was a minor, it is claimed without apparent dissent, that if he had reached the age of eighteen, he might have entered the military service of the United States without his father's consent. And the defendant gave testimony for the purpose of showing that to his eye, the boy appeared to be of the age of eighteen. We do not see it being conceded that he was a minor, how it was material what his exact age was, it being under twenty-one. The defendant deeming it of importance, asked the court to charge the jury that to render the defendant liable in this action, he must have known that the boy was under the age of eighteen years at the time of enlistment. Had this request have been complied with, it would have made the case turn wholly upon the fact of the enlistment of the minor.
But whether it was lawful or not for him to enlist without the consent of his father (and we are not to be understood as conceding that it was), this was not all that there was in the *Page 260 
acts of the defendant. It was still a question, whether knowing that the son had left the service of the father without the father's consent, the defendant did not sustain harbor and conceal him, to serve the purpose of the defendant in becoming a substitute for him, and thus to do the duty which the defendant was liable to be called upon to do. If it should be conceded that one may without incurring liability, countenance and aid a minor of eighteen years of age and over, in leaving his father's service against his father's consent, where the sole purpose is that the minor shall enter the United States military service; yet it is quite another thing to afford countenance and aid, and to harbor and sustain a minor, his father unwilling, and to hire him to become a substitute for the person paying him, and thus to relieve that person from the performance of a perilous duty resting upon himself. It then becomes a keeping of a minor from the service of the parent, not for the public needs, but that he may do the service of a private person. It was not erroneous not to charge as requested in this respect.
The court charged the jury that if the plaintiff's son was under the age of eighteen at the time of his enlistment, the defendant was liable whether he knew it or not. To this the defendant excepted.
The whole charge of the court is not before us in the printed case. It may be that, if this clause could be read in connection with other parts, it might not appear objectionable.
But as it stands before us, it is the only instruction given by the court to the jury. And as it reads thus standing alone, it rests the liability of the defendant solely upon the fact of the age of the minor. This puts out of view the question of the good faith of the defendant, and his knowledge or want of knowledge, of the desertion from the father's service, which was in the testimony, and proper matter for the *Page 261 
consideration of the jury, as we have attempted to show. This charge was, therefore, erroneous.
For the several errors noticed, the judgment should be reversed and a new trial granted with costs to abide the event.
All concur.
Judgment reversed.