ELIZABETH WILSON, Respondent, *v.* MARY COULTER and MARGARET BROCKWAY, Appellants.

*Husband and wife — alienation of a husband's affections by his sisters — conveyance of his property to them — what verdict is not excessive.*

In an action brought by a married woman to recover damages because of the alienation of the affections of her husband by the defendants, his sisters, it appeared that the husband on Saturday, the day following the marriage, returned to his home, where one of the defendants resided; that she upbraided him with much severity for his conduct, and that on the same day the other defendant talked to him severely about it; that on Sunday afternoon, when the plaintiff went to his home to seek him, she was refused admission by both defendants, although her husband was in the house at the time; it also appeared that while she was there bells were rung, tin pans pounded and tin horns

blown, and that this was kept up until she returned to her home, and was repeated every night for a week; that the husband remained concealed part of the time in the house of one sister, part of the time in that of the other, until the following Monday, when he went to Lockport with one of them, where he conveyed his farm to both sisters without consideration; and then proceeeded to Buffalo with the same sister, who gave him seventy-five dollars, which she had borrowed the day previous, for the purpose of enabling him to go into a western State, and that he left on the train; and had not since returned to the State of New York.

_Held,_ that the court did not err in refusing to nonsuit the plaintiff, as the evidence was quite sufficient to present a question of fact for the jury as to whether the defendants had induced the plaintiff's husband to separate from her; That a verdict for $1,750 was not excessive ;

That evidence offered by the defendants to show that the plaintiff's husband was engaged to a woman in Dakota, and impliedly that the engagement existed at the time of his marriage (it not being asserted that the plaintiff knew of his alleged engagement), was properly excluded, as was also a question asked of the husband, who had testified that he did not leave his wife on account of any thing his sisters said to him, "Did anyone tell you to get out of the way ?" and the questions, "Did you ever ask Miss Richardson to marry you ?" and "Did she ever ask you to marry her ?"

That the court correctly charged the jury that if they found that the husband testified untruthfully in respect to the plaintiff's conduct in inducing him to marry her, they might, if they saw fit, disregard his evidence in relation to other subjects testified to by him ;

That the plaintiff was properly allowed to show that, by reason of the conveyance of her husband's property to the defendants, nothing had been recovered by her under a judgment of separation which she had obtained against him for alimony or costs.

_Semble,_ that it was competent for the plaintiff to show the conveyance by the husband of his property to the defendants as bearing upon their intent to deprive the plaintiff of all means of support out of the property of her husband to which she had a legal right, and also as tending to show that the defendants were interested in separating the husband from his wife, it not being pretended that the defendants had paid anything for this conveyance.

In such an action the plaintiff is entitled to recover damages, not only for the loss of her husband's society, but for the loss of his support and maintenance, to which the marriage relation entitles her from her husband and his estate.

APPEAL by the defendants, Mary Coulter and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Niagara on the 9th day of October, 1896, upon the verdict of a jury, with notice of an intention to bring up for review upon such appeal an order bearing date the 8th day of October, 1896, and entered in said clerk's office,

denying the defendant's motion for a new trial made upon the minutes.

This action was begun March 17, 1896, to recover damages for alienating the affections of the plaintiff's husband and inducing him to desert her. At about nine o'clock in the evening of Friday, September 14, 1894, the plaintiff, then Elizabeth Richardson, spinster, aged forty-three years, and William A. Wilson, bachelor, aged forty-four years, intermarried at the town of Cambria, N. Y. The plaintiff then lived with two brothers and two sisters, farmers, and resided within about twenty rods of the house in which William A. Wilson then resided, who was a farmer owning 100 acres of land, 40 acres of which were subject to a life lease of his mother. The defendants are sisters of William A. Wilson, and are widows, owning small farms in the vicinity, which he had worked for them for a few years previous to the marriage. The marriage was solemnized by a clergyman of the town, and there is no question as to its regularity. On the evening of the marriage a party was given by Mary Coulter, one of the defendants, to which William A. Wilson and Miss Elizabeth Richardson were invited; but instead of attending the party they went to the residence of the clergyman and were married, and returned to the home of the bride. They retired between eleven and twelve o'clock and occupied the same room. At about half past five the next morning they arose and William A. Wilson left to do the chores at the house where he resided and never returned. The marriage was preceded by a courtship of about six months. The bride bore an unblemished reputation, and, though William A. Wilson was sworn, the only reason he gave for his conduct was that she insisted on being married on that occasion, against his protest, and that after the marriage she asked him to convey to her his farm. This she denied. On leaving the house Mr. Wilson returned to his dwelling where one of the defendants, his sister, Margaret Brockway, resided. He told her that he was married, and she upbraided him with much severity for his conduct. On the same day (Saturday) the other defendant, Mary Coulter, his sister, came to the house and she also talked severely to him about his conduct, and during the conversation he told his sisters, as they testified, that he would not live with his wife, but should go away. The evidence of William A. Wilson was taken on a deposition, and it appeared that they

became engaged in the spring of 1894, and had frequently talked of their approaching marriage. The clergyman who performed the ceremony and his daughter who was present testified that William A. Wilson was not reluctant to enter into the marriage relation, but seemed willing and cheerful, and " they acted similar to other brides and grooms."

He remained concealed in the houses of his sisters, part of the time at the house of one of them and part of the time at the house of the other on Saturday and Sunday, and on Monday (September seventeenth) he went with Mrs. Coulter to Lockport where he conveyed his farm to the defendants. After the execution and delivery of the deed, which was afterwards recorded, Mrs. Coulter accompanied Mr. Wilson to Buffalo and gave him seventy-five dollars, which she had borrowed on the day previous, for the purpose of enabling him to go into a western State. Mrs. Coulter testified that she saw her brother purchase a ticket for Duluth and that he left on the train, since which he has not returned to this State.

On Sunday afternoon at about three o'clock the plaintiff went to the residence of Margaret Brockway for the purpose of finding her husband. She there found both defendants, and an altercation occurred and the plaintiff was not allowed to enter the house. At this time her husband was upstairs in a bedroom. The plaintiff testified that one of the defendants rang a bell and the other pounded on tin pans and blew a tin horn, which was kept up, as the plaintiff testified, until she returned to her home, and that this was kept up every night for a week. The defendants testified that they did not ring bells, pound pans or blow tin horns, but admitted that some one did. Other conduct on the part of the defendants was testified to by the plaintiff and corroborated to some extent by other witnesses which was quite uncivilized in its character. For many months the plaintiff was unable to learn of the whereabouts of her husband. August 10, 1895, she began an action against her husband for separation on the ground of desertion, and, April 1, 1896, a judgment of separation was entered. Under this judgment the plaintiff has been unable to recover anything from the estate of her husband. His farm, which was conveyed to the defendants, has ever since been occupied by them. The plaintiff testified that previous to their separation Mr. Wilson had always been kind and affection-

ate towards her, and that his sisters had never exhibited ill-feeling towards her until after the marriage. The jury rendered a verdict for $1,750 damages, and from the judgment entered thereon and from an order denying a motion for a new trial made on the minutes, the defendants appeal.

*Abner T. Hopkins,* for the appellants.

*P. F. King,* for the respondent.

Follett, J.:

The appellants urge five grounds for reversal of the judgment and order: (1) That the court erred in overruling the defendants' motion for a nonsuit made at the close of the plaintiff's case and renewed at the close of the evidence. (2) That the verdict is against the weight of evidence. (3) That the verdict is for excessive damages. (4) For errors in admitting and rejecting evidence. (5) For errors in the instructions of the court to the jury.

The court did not err in refusing to nonsuit the plaintiff, as the evidence was quite sufficient to present a question of fact for the jury as to whether the defendants induced plaintiff's husband to separate from her. Both defendants were sworn before the referee in the action for a separation, and by the minutes of the evidence produced and verified on this trial it appears that Mrs. Coulter testified that on the next day after the marriage she went to Lockport and consulted counsel to see if the marriage could not be annulled. She also testified that she loaned her brother $100 with which to leave the State, and both defendants testified that on Sunday, when the plaintiff came to the house looking for her husband, they ordered her off the premises. Mrs. Coulter testified that when the plaintiff started to leave the premises: "Then we had some fun. Some one rung a bell as she went up the road; some one beat pans or pails and blew horns and made a noise generally to humiliate her; the Sabins were all there; they brought their own bells. I took my full share in this business. It was after that I gave my brother the hundred dollars." The defendants by their evidence given on this trial and on the trial before the referee established a cause of action as against themselves.

For the reasons before stated the verdict is not against the weight of evidence, but is fully supported by it. The verdict for $1,750 is not excessive, as the evidence clearly establishes that the defendants not only upbraided the plaintiff's husband in the most violent terms for having married, but induced and aided him to leave the State; and that when the plaintiff came to inquire after her husband, they were guilty of the most uncivilized conduct for the purpose of humiliating and holding her up to derision, and afterwards took possession of all his property for their own benefit, and thus far have excluded the plaintiff from any benefit therein. In actions of this kind the motives which induce defendants to do acts constituting the cause of action may be considered on the question of damages. (*Barnes* v. *Allen*, 1 Abb. Ct. App. Dec. 111; S. C., 1 Keyes, 390; 1 Sedg. Dam. [8th ed.] § 363 *et seq.*)

The exceptions to the admission and exclusion of evidence will now be considered.

It was competent for the plaintiff to show that the defendants, three days after the marriage, took a conveyance to themselves of all the property of the husband and have since enjoyed it, as bearing upon their intent to deprive the plaintiff of all means of support out of the property of her husband to which she had a legal right, and also as tending to show that the defendants were interested in separating the husband from his wife. It should be stated that the defendants do not pretend to have paid anything for the deed which they received. However, the question objected to was not answered.

The defendants offered to show that the plaintiff's husband at one time was engaged to a woman in Dakota, and, impliedly, that the engagement existed at the time of his marriage, which was excluded on the plaintiff's objection, and the defendants excepted. It was not asserted that the plaintiff knew of this alleged engagement, and the fact inquired about was not relevant to any issue in the case. A prior engagement to another, of one of the parties entering into the marriage relation, fortunately does not affect the marriage, nor is it usually the cause of unharmonious relations between the husband and wife. Besides, the fact that there was such an engagement had been testified to by the defendants.

The defendants offered to read a conversation between the husband and the defendant Coulter, which I assume was narrated by

the husband in his deposition, though this fact does not appear in the record. This offer was objected to by the plaintiff, excluded, and the defendants excepted. The case does not show what the conversation was, when it occurred, or to what subject it related. In case the defendants desired to rely on this exception, they should have incorporated the rejected evidence in the record, so that this court could have determined whether it was material. The trial court saw it and determined that it was immaterial, and this court cannot, without seeing it, hold that it was material.

The defendants asked the husband : " Q. Did any one tell you to get out of the way ? " This question was objected to by the plaintiff, excluded, and the defendants excepted. The witness was permitted to testify : " I did not leave my wife on account of anything that either of my sisters ever said to me, nor stay away from my wife on account of anything either of them said ; * * * they have not, at any time, told me not to provide for her ; I have not failed to provide for my wife on account of anything either of my sisters said or did ; it was my own desire to leave my wife." He also testified that he left his wife because she wanted a deed of his property and insisted on being married at the time they were married. This was all the defendants were entitled to on this subject. What any one else said to him about going away was irrelevant.

It was not error to refuse to allow the husband to testify that he had received no money from his sisters since he left Buffalo, nor was it material to show by him that the money borrowed by Mrs. Coulter on Sunday, and given him to pay the expenses of his journey, should be applied against $100 which he asserted she owed him.

The defendants asked the husband : " Q. Did you ever ask Miss Richardson to marry you ? " " Q. Did she ever ask you to marry her ? " These questions were objected to by the plaintiff's counsel, the objection was sustained and an exception taken. The husband had previously testified that he and Miss Richardson became engaged during the summer previous to their marriage. Pursuant to this engagement they voluntarily intermarried, and it is entirely immaterial which made the proposal. A woman has a legal right to make a proposal of marriage, and a man, like a woman, may accept or decline ; and a marriage voluntarily entered into, preceded by an

engagement proposed by the woman and accepted by the man, is in all respects as legal as a marriage founded on an engagement proposed by the man and accepted by the woman.

Had the fact been established that the engagement and marriage in this case were proposed by the plaintiff, it would not have justified an inference that both were not the result of mutual affection.

Which shall make the proposal is merely a matter of taste and custom.

The defendants asked the husband : " Q. Now tell us why you left your wife ? " He had already stated the circumstances attending the marriage, his abandonment of his wife and his reasons therefor, and the question simply called for a summing up of the operations of his mind, and it was not error to exclude it.

The court did not err in allowing the plaintiff to show that, by reason of the conveyance of her husband's property to the defendants, nothing had been recovered under her judgment of separation for alimony or costs. In case the theory of the plaintiff was sustained by the jury, as it was, she had the right to show what she had been deprived of by the conduct of the defendants.

The alleged errors in the charge, which were not excepted to, but now complained of, are entirely insufficient to warrant the granting of a new trial on the ground that the issues were submitted upon an erroneous theory within the rule laid down in *Whittaker* v. *Delaware & Hudson Canal Company* (49 Hun, 400) and kindred cases.

It is urged that the court erred in saying to the jury that if they found that William A. Wilson testified untruthfully in respect to the plaintiff's conduct in inducing him to marry her, they might, if they saw fit, disregard his evidence in relation to other subjects testified to by him. The jury was not advised to disregard his evidence in other respects if he were found to have testified untruthfully upon one issue, but was simply told that his untruthfulness upon one issue, if so found, might be taken into consideration in determining the truthfulness of his testimony on other issues. The instructions were clearly within the rule of the cases arising under the maxim, " False in one, false in all."

The court told the jury that Mrs. Coulter said to her brother " that he was either a goose or a fool to marry this woman," and it is urged by the defendants that there is no evidence of such a state-

ment. John E. Pound, the referee before whom the limited divorce action was tried, testified that Mrs. Coulter swore before him : " We were all angry over it. We scolded him for being such a goose or fool."

The reference made by the court to the treatment of the plaintiff by the defendants and their hired help was borne out by the evidence. The employees of the defendants took part in beating of pans and blowing of horns and were not restrained by the defendants, although they were present.

The court did not assume that the plaintiff's husband was influenced to separate from her by the defendants, nor did it instruct the jury that the declarations made by the husband in respect to his intention not to live with the plaintiff were immaterial, but instead told the jury that if these declarations were made prior to being influenced by the defendants, they were material declarations indi‑ cating a purpose on his part to abandon his wife by his own free volition. Nor was there error committed at folio 476. The defendants made no pretense that they desired their brother to return to and live with the plaintiff. Mrs. Coulter went alone and on her own account the day succeeding the marriage to see if it could not be annulled. Both defendants testified that they advised the plaintiff's husband to fight out the question of the marriage with the plaintiff. After the court had submitted the principal issue of fact to the jury — whether the defendants did induce or persuade the husband of the plaintiff to remain away from her — it said that the action was based in part on " the loss of the conjugal society which of right should exist between a husband and his wife and which the plaintiff has been deprived of in consequence of the wrongful and unlawful acts of the defendants."

Reading the parts of the charge immediately preceding and succeeding this instruction, it is plain that the judge did not intend to take the principal question of fact from the jury, and that the jury could not have so understood him. The court did not instruct the jury that the plaintiff was entitled to recover, and that the only question for them was that of damages. Not one of the foregoing instructions discussed was excepted to by the counsel for the defendants, and, if every one of the instructions had been, no error would have been presented.

Upon the request of the plaintiff's counsel the court charged : " There is no evidence in the case that would legally justify the plaintiff's husband in abandoning her." To this the defendants excepted.

I am unable to find any evidence in this record, given in behalf of the defendants, which, if believed, would have justified or excused the husband for deserting his wife.

The defendants requested the court to charge that the plaintiff could not recover damages subsequent to August 10, 1895, when she began her action for a separation on the ground of desertion ; and also that she could not recover damages after April 1, 1896, when the judgment in that action was entered. The court replied : " On that subject, gentlemen, I will charge you that if it was the plaintiff's desire and wish to become separated from her husband at the time and end her relations with him, rather than to live with him as her husband, then you will not take into consideration her loss of his conjugal society after that period. But if, on the other hand, you find that she desired to live with her husband, but was unable to find him, to locate him, and that this action of separation was instituted under the circumstances and as the necessary result of the action of these defendants in inducing her husband to leave her and remain away from her, and as a necessary course for her in order to obtain some provision for her maintenance and support, then you are entitled to still take into consideration, as charged by the Court before, all the loss of the conjugal society resulting from the wrongful act of the defendants."

The defendants excepted to the refusal to instruct as requested, and to the instructions given.

In actions of this character the plaintiff is entitled to recover damages not only for the loss of her husband's society, but for the loss of his support and maintenance to which the marriage relation entitles her from the husband and his estate. In case the jury found that the plaintiff did not prosecute her action for a separation because of her desire to live apart from her husband, but because she was unable, by the action of the defendants, to learn his whereabouts and induce him to return, then the permanent loss of his society and support could be taken into account by the jury on the question of damages.

An examination of all the questions discussed by the learned counsel for the appellants in his brief, and orally at the bar of this court, fails to disclose any just or legal ground for reversing the judgment, which, with the order denying a motion for a new trial, should be affirmed, with costs.

All concurred.

Judgment and order affirmed, with costs.