(69 App. Div. 582.)

### HOLLISTER v. VALENTINE.

(Supreme Court, Appellate Division, Second Department.　March 14, 1902.)

1. APPEAL—CLAIM NOT MADE BELOW.
　　Though a complaint is, in form, good not only as one for alienation of affection, but also for criminal conversation, yet plaintiff never having suggested that the action was for the latter cause, even when defendant moved to dismiss because there was no evidence that defendant had alienated the woman's affections, or when the court charged that the action was for alienation of affections, cannot, on appeal, insist the action was for criminal conversation.

2. ALIENATION OF AFFECTIONS—EVIDENCE.
　　There is no evidence for the jury of defendant's alienation of the affections of plaintiff's wife, defendant not having met her 'till after she obtained a divorce from plaintiff for cruelty and nonsupport, which was invalid because of want of jurisdiction, defendant having married her supposing the decree was valid, there being no proof that she then had affection for plaintiff, and no presumption that she ever would have, she testifying that she never had any for him, and married him under compulsion.

Appeal from trial term, Westchester county.

Action by Charles A. Hollister against Edward Valentine. From judgment for plaintiff and order denying motion for new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

John F. Brennan, for appellant.
Frank A. Bennett, for respondent.

JENKS, J. The plaintiff and Miss Duncombe both resided and intermarried in this state. The wife subsequently left her husband, and, in the courts of North Dakota, obtained a decree of absolute divorce against him on the grounds of cruelty and nonsupport. The husband was served in this state, but made no sign. The wife returned to her home with her decree, resumed her maiden name, and went to live with her grandmother. Under these circumstances, the defendant first met her. Later she showed to him her decree of divorce. He paid his addresses to her, and a year later they were married in the state of Connecticut, on July 19, 1900, and thereafter lived together in this state as man and wife. Some time after, the plaintiff sued her for divorce, and while that action was sub judice also instituted this suit.

The plaintiff complains that the defendant, contriving and wilfully intending to injure the plaintiff and deprive him of the comfort, society, and assistance of the said wife of the plaintiff and to alienate and destroy her affection for him, heretofore, on or about the 1st day of August, 1900, and on divers other days and times after that day, before the commencement of the action, at a hotel in the village of Peekskill, N. Y., and at the home of the defendant in Yonkers, N. Y., and at the home of one Naomi Duncombe, in the city of Mt. Vernon, N. Y., and elsewhere, wrongfully and wickedly, and without the privity or connivance of the plaintiff, debauched and carnally knew the said * * *, then and ever since the wife of the plaintiff, by means whereof the affection of the said * * * for the plaintiff was wholly alienated and destroyed; and by reason of the premises the plaintiff has wholly lost the comfort, society, and assistance of his said wife, which, during all the time aforesaid, he otherwise might and ought to have had and enjoyed. I find that this complaint is in the form adopted by Abbott in his work on Pleading (volume 11, p. 986), from Tilton v. Beecher, 59 N. Y. 176, 17 Am. Rep. 337. I am clear that the precedent is a good declaration upon criminal conversation, and I have no fault to find with Currie v. Gardenier, 59 App. Div. 319, 69 N. Y. Supp. 245. But abduction is one cause of action and adultery is another. 3 Bl. Comm. 139; Levy v. Harris, 29 App. Div. 453, 51 N. Y. Supp. 963. And as the loss of consortium without justifiable cause is the gist of the action for alienation of affection (Barnes v. Allen, *40 N. Y. 390, 394, and authorities cited; Bennett v. Bennett, 116 N. Y. 584, 587, 23 N. E. 17, 6 L. R. A. 553), the complaint is also good for that cause of action, and the evidence adduced was as competent and as relevant thereto as it was to an action for criminal conversation. At the close of the plaintiff's case, the defendant moved to dismiss on the ground that the abandonment appeared to have taken

place at a time antedating any acquaintance of either of these parties, so far as the record shows, and on the ground that there must be an inducing cause of the abandonment in order to show an action for the alienation of the affections. The record fails to show that the plaintiff made point or suggestion that the action was for criminal conversation. At the close of the testimony, when the learned counsel for the defendant moved for a dismissal on the ground that the plaintiff had failed to show that the affections of the woman, if she ever had any for the plaintiff, were alienated by the defendant, there was no suggestion by the plaintiff that his action was for criminal conversation. The learned trial justice began his charge with the statement, "The action is one known in the law as an action for alienation of affections," and his lucid and luminous charge was based entirely upon this theory. The plaintiff neither took exception nor submitted requests, but acquiesced in the statement and in the submission. I think that he is precluded now to insist that his action was for criminal conversation, and to review a judgment gained upon one cause of action as though it had been won on another, although sustainable upon the pleading. Caponigri v. Altieri, 165 N. Y. 255, 263, 59 N. E. 87, and authorities cited. The circumstances of the case emphasize the soundness of the rule. If the case had been submitted on the theory that the action was for criminal conversation, it cannot be assumed that under the circumstances the jury would have mulcted the defendant in substantial damages for living with the woman whom he had married if it believed that he was innocent and had mistaken the law, and that the instant his lawful rights as a husband were challenged he had ceased to cohabit with the woman. I think that we must dispose of this appeal on the theory that the case tried was for alienation of the affections.

There is no contention that the defendant had aught to do with the original estrangement between the plaintiff and this woman. This second marriage took place, or (to concede the contention of the plaintiff, but not deciding it) these illicit relations began long after the woman, so far as was in her power, had freed herself from even the name of the plaintiff. The illicit intercourse between the woman and the defendant, even though coupled with the fact that the woman absented herself from the roof of the plaintiff (her husband), cannot establish this cause of action. Marriage is not necessarily abduction, and yet the essential element of the action as originally recognized was abduction,—an act of ravishment, or action of trespass vi et armis de uxore rapta et abducta (3 Bl. Comm. 139; Barnes v. Allen, supra); and so there must be some proof of act or words of persuasion of the defendant beyond those facts (Buchanan v. Foster, 23 App. Div. 542, 544, 48 N. Y. Supp. 732, and authorities cited). There is not an act or a word proved to show that the defendant moved or attempted to move the woman to leave the plaintiff or to remain away from him. The plaintiff testifies that when the woman left him he was unacquainted with the defendant, and, so far as he knew, his wife, too, was unacquainted with him. It is clearly established that the woman never even met the defendant until several months after her return from Dakota with her decree of divorce. She was married to the defendant on July 19, 1900, while the time of grievance named in the complaint

is August 1, 1900. There is no proof that at the time the defendant met the woman she had any affection for the plaintiff, but, indeed, the testimony would justify the contrary conclusion. She testifies that she never had any affection for the plaintiff, but that she married him by his compulsion. She had left him on account of his cruelty and non-support, and had divorced him absolutely, and voluntarily had made herself free to marry again in North Dakota. He defeated her purpose. Surely, if it be that the policy of the law does not recognize this marriage, this does not afford any presumption that the woman had the slightest affection for the husband whom she had attempted to divorce. The learned trial justice was correct in his view.

The error of the trial is this: The learned court in its charge said:

"The claim of the plaintiff is that his treatment of his wife had been such that they had lived together so happily and so pleasantly that there was no reason whatever why she should leave him for an hour, let alone forever, and that therefore, up to the time the defendant appeared upon the scene, there was every reason to apprehend and believe that womanlike she might change her mind, and return to him, and in that way he might continue to enjoy her affection and society; but that when the defendant went to Connecticut and married her, and began consorting, cohabiting, living with her as her husband, from that time on there was no chance of any reunion between these parties, and that the act of the defendant ended all possible chance of the affections again being restored, and their again resuming the relations that had before that time existed, and living happily together."

Thereafter, defendant's counsel said: "I except to that portion where you say the claim of the plaintiff is that she had no reason to leave." The Court: "Is not that his claim?" Defendant's counsel: "I beg your pardon, I had not completed; that is part of his claim, yes, sir,—and that she might return to his society if she had not married the defendant." The Court: "I understand the plaintiff to claim that." Plaintiff's counsel: "Yes, sir." Defendant's counsel: "We except to that statement, and ask your honor to charge that there must be shown before that can be submitted to the jury a likelihood of a reunion." The Court: "I leave it to the jury to determine, on all the facts in the case, what the fact was in that regard as they find it to be." But I fail to find any evidence that shows or tends to show that there was a likelihood of reunion. It could not be shown by the fact that the plaintiff was once her husband, because the husband had been left by the woman of her own accord, not content to pray for a divorce a mensa et thoro, as she might have done (if her story be true), in this state, but seeking absolute divorce on account of his cruelty and of his nonsupport. Marriage does not necessarily imply love. If it did, then her second voluntary marriage implied that she loved the defendant, and it is not to be presumed that she freely married the second husband while she had any affection, or the latent possibilities thereof, for the first spouse. There is no necessary presumption that love outlives cruelty and nonsupport. Moreover, there was in this case the testimony of the woman that she had never loved the plaintiff, but that while a girl under 17 she was married to him clandestinely, and at the point of the pistol. There is no proof that the second marriage

was one of convenience or of necessity, or that it was not entirely voluntary on her part. When the plaintiff was served in the foreign divorce proceedings, it does not appear that he ever lifted a finger to object, to remonstrate, to reconcile, or even to refute. Of course, he had a legal right to stand mute. The woman returned with her divorce to the home where the plaintiff lived. He did not try to speak to her, or to write to her, or to assist in her support. They were dead, one to the other. If the divorce was invalid in New York state, the plaintiff in this case made it so by refusal or by omission to submit to the jurisdiction of North Dakota. She was under no moral duty to return to him if the story she tells be true. For in this state she was entitled to a separation for her wrongs. Or, if her story was a tissue of lies, then her duty of return was but moral, and it is at least debatable whether the law presumes that there would be a performance. Lawson, Pres. Ev. (1st Ed.) p. 81. There were no children to beckon her back from sense of duty to them. The plaintiff had brought an action against her for her adultery with the defendant, which is about the severest blow that can be given to a woman, when the truth of such allegation is founded upon a construction of the law, and not upon her wantonness. I am constrained to think, therefore, that the jury were inadvertently invited to speculation and to conjecture beyond the field of evidence. The old maxim, "Semper varium et mutabile femina est," cannot close this gap, nor can we find evidential facts in the alleged tendency of woman to forgive and to forget. There is a further consideration. When the defendant met the woman, he found her with a decree of divorce, living under maiden name, in the home of a grandparent. He courted her openly in the town in which the plaintiff lived, married her, and set up his household within a few miles of that town. It is not to be presumed that the defendant intended to commit the offense penalized by section 301 of the Penal Code. The presumption is the contrary. Lawson, Pres. Ev. (1st Ed.) pp. 93, 95, citing Blanchard v. Lambert, 43 Iowa, 228, 22 Am. Rep. 245; In re Edwards' Estate, 58 Iowa, 431, 10 N. W. 793. And the circumstances enforce the presumption. Moreover, when the action for divorce was brought against the woman by the plaintiff, the defendant showed his respect for the law by ceasing to live as a husband with the woman whom he had married. If any inference is to be drawn from all of the conduct of the defendant, is it not that he acted in an honest belief, justified by the circumstances and by the information which he had received? In Bennett v. Smith, 21 Barb. 439, a case frequently cited, it was held that the law would not mulct a parent in damages when his advice to his child, and the wife of the plaintiff, was given in honest belief, though the information might be unfounded, citing Hutcheson v. Peck, 5 Johns. 196, in which case Kent, C. J., said that in the case of a parent the quo animo ought to have been made the test of inquiry and rule of decision. See, too, Smith v. Lyke, 13 Hun, 204. I am well aware of the distinction which obtains between the conduct of a parent, relative, and stranger. But when we are considering whether there was any proof or presumption of alienation incident to marriage and consortium of the defendant and

the woman, in that the defendant thereby prevented the reunion of the plaintiff and the woman, I cannot regard him as a mere stranger, intermeddler, or seducer, but as one who acted in the honest belief that he had the right to court the woman and to marry her.

The judgment should be reversed, and a new trial granted, costs to abide the event. All concur.