## Rinaldo A. Perry v. Charles Lovejoy.

*Enticing away another's wife— Wife's letters as evidence of affection for her husband—Criminal conversation—Evidence of marriage.*

One man sued another for enticing his wife away. He showed that he and his wife had been living close by defendant and on the latter's land, and that he had left his wife there while he went West to seek a location ; that he was gone about three months during which time he had letters from his wife, one of which indicated affection for him ; as a later one did not, he returned at once, and after living with his family about a week his wife left him and went home to her father with whom she stayed some time and then went to work at defendant's ; that she afterwards refused to live with her husband and sued for a divorce. *Held* that having shown all this, plaintiff was properly allowed to introduce the letter from his wife to show that at one time since he went away she was affectionately disposed. *White v. Ross*, 47 Mich. 172, distinguished.

A wife's incapacity at common law to testify in an action brought by her husband for enticing her away is modified by legislation so that where her husband consents to her testifying she may do so; if he does not consent, she cannot testify even in his behalf, though letters written by her may be admissible.

In an action by a husband for simply enticing away his wife, plaintiff cannot show that defendant has had illicit intercourse with her.

In a case involving adultery or criminal conversation, the criminal intercourse must be substantially averred and there must be proof of actual marriage. But in an action by a husband for enticing away his wife, evidence of cohabitation and repute and of defendant's admissions of the fact are enough to establish the marriage relation.

The defendant in an action for enticing away another man's wife introduced evidence tending to show that she had left her husband of her own accord and because of his cruel treatment, and farther offered to prove expressions used by her to his own wife, while living in his house but in her husband's absence, concerning the latter's conduct towards her. *Held* that the offer was too indefinite and was properly overruled, as it fixed no time and did not show whether the expressions related to good or bad conduct or any conduct material to the issue. But defendant could introduce as part of the *res gestae* a letter written by the wife to her parents before she left her husband, in which she represented that he was so unkind to her that she was "sick of her home.'

49 Mich.—34

Error to Ingham.   Submitted Oct. 18.   Decided Jan. 5..

CASE.. Defendant brings error.   Reversed.

*Q. A. Smith* and *Huntington & Henderson* for appellant..

*John C. Shields* for appellee.

GRAVES, C. J.   This is a special action on the case in which the plaintiff Perry alleges an unwarrantable and injurious interference by Lovejoy with his social and domestic rights and enjoyments.   The substance of the charge is that Lovejoy tortiously enticed and procured Perry's wife to refuse to live with him and to desert him, whereby he lost her affection and her comfort, fellowship, society and assistance.   A recovery was had and defendant alleges exceptions. The plaintiff's marriage occurred in 1870 and at the date of trial in March last they had two children, a boy of eleven and a girl eight years of age.

The plaintiff adduced evidence that from the time of the marriage down to June 25, 1880, his wife continued to live with him ; that in the fall of 1877 he moved his family into a house on defendant's farm standing twenty or thirty feet from the house then and still occupied by defendant ; that he stayed there with his family until about the 21st of March, 1880, at which time he went to Kansas to find a place to remove to and left his wife and children in the house ; that while he was in Kansas he received letters from his wife, two of which were produced, the others having been destroyed ; that those produced though of different dates were received at the same time and in the same envelope ; that the one indicated affection for him by his wife whilst the others did not, which induced him to return at once and he did so about June 15, 1880 ; that he thence lived with his wife and family for about a week, when, and during his absence and without his knowledge, she left the house and repaired to her father's and there stayed three or four weeks and then proceeded to live and work at defendant's for a period of three or four months and has since refused

to live or cohabit with her husband; that in December, 1880, she commenced a suit in chancery against him for a divorce for extreme cruelty; that he caused his appearance to be entered, but no evidence has been taken and no hearing had.

At this stage of the trial the plaintiff offered the letter containing indications of the wife's affections and it was objected to on two grounds: 1. Because the judgment in *White v. Ross*, 47 Mich. 172, was opposed to its admission; 2. Because the writer, the plaintiff's wife, was then actually present and might be called at his election to make her statement under the sanction of an oath.

The court allowed the letter to come in.

In view of the antecedent showing we think this determination was in accordance with the law of evidence.

By the common law the plaintiff's wife was absolutely incompetent. The rule has been so far modified by legislation as to make her competent in case of his consent, and leaving him perfectly free to give or withhold his consent. No fetter is imposed on the discretion so given. He refused and the consequence was that she was just as incompetent as she would have been in case the common law had remained unaltered. In point of principle therefore the circumstance that she was actually in court and could be made a lawful witness at the plaintiff's own instance was void of influence on the admissibility of the letter.

We have seen what was the nature of the evidence which preceded the offer of the letter and the conclusion is unavoidable that there was enough in it to allow the jury to inquire whether the defendant had committed an actionable interference in the plaintiff's family relations. The question was not ruled by *White v. Ross* supra. The gist of the action is the plaintiff's loss of his wife's society, services and comfort by means of the tortious conduct of the defendant (*Winsmore v. Greenbank* Willes 577; *Bennett v. Smith* 21 Barb. 439; *Barnes v. Allen* 1 Keyes 390), and among the questions which pertain to the issue are these: Was the loss attributable to the misconduct of the plaintiff, or was it

owing to the voluntary doings of the wife, or was it effectuated or induced by the illegal behavior of the defendant? If it occurred, and the defendant was not guilty of any tortious conduct to bring it about, then the action could not be maintained ; and as bearing on the question it was pertinent to inquire into the state of the wife's mind and affection towards the plaintiff and on that subject her letter was legitimate evidence. *Thompson v. Trevanion* Skin. 402 ; *Aveson v. Lord Kinnaird* 6 East 188 ; *Walton v. Green* 1 C. & P. 621; *Houliston v. Smyth* 2 C. & P. 22.; *Jones v. Thompson* 6 C. & P. 415 ; *Wilton v. Webster* 7 C. & P. 198; *Hoare v. Allen* 3 Esp. 276 ; *Trelawney v. Coleman* 2 Stark. 191 ; s. c. 1 B. & Ald. 90 ; *Willis v. Bernard* 8 Bing. 376 ; *Park v. Hopkins* 2 Bail. 408 ; *Bennett v. Smith* supra ; *Edwards v. Crock* 4 Esp. 39 ; *Preston v. Bowers* 13 Ohio St. 1 ; *Snover v. Blair* 25 N. J. L. 94.

The next point is on a ruling that the plaintiff might show that the defendant had been guilty of illicit intercourse with Mrs. Perry. The defendant objected to going into evidence on that topic because the declaration alleged no such wrong and any attempt to prove it would be a departure from the issue.

We think the objection was well taken.

As stated formerly the plaintiff alleged, as the cause of his injury, the wrongful enticement and procurement of the defendant and not the offense of adultery. When the latter is relied on, the suit is for criminal conversation, and whether the form of action is case or trespass, the criminal intercourse must be substantially averred. The present is a recognized action wholly distinct from one for criminal conversation and the issue is narrower and the proof of marriage demanded is less strict. Direct proof of a formal marriage is not requisite. But evidence of cohabitation and repute and of defendant's admissions that the plaintiff and his alleged wife were married may be allowed to satisfy the jury. Abbott Trial Ev. 681, and authorities cited. On the other hand where the action is for criminal conversation an actual marriage must be proved and such evidence of cohabitation and

repute as would maintain the other suit will not answer in this. *Hutchins v. Kimmell* 31 Mich. 126; *Birt v. Barlow* 1 Doug. 171; *Morris v. Miller* 4 Burr. 2057; *Hemmings v. Smith* 4 Doug. 33; *Darm v. Kingdom* 1 Thomp. & C. 492; *Campbell v. Carr* 6 U. C. Q. B. (O. S.) 482; *Kibby v. Rucker* 1 A. K. Marsh. 391; 2 Greenl. Ev. § 461, and cases cited.

A further distinction between the actions is that while the fact of adultery is a necessary ingredient in the suit for criminal conversation, it has no place in the action for an enticement in case there is no charge of illicit intercourse. If the plaintiff should be allowed to prove adultery in one case as well as in the other the proper distinction between the actions would be subverted and it would be at his election to prosecute in the form. here adopted and thereby escape the rule for strict proof of marriage and yet obtain a recovery as in an action for criminal conversation. The defendant is not bound to meet a case for adultery when the plaintiff has not charged him with it.

The defendant adduced evidence to disprove the existence of improper relations with Mrs. Perry, and to establish also that she separated from her husband in consequence of his cruel treatment and at her own instance, and that defendant did nothing to lead her to go away from her husband or to continue away from him. And the defendant offered to prove expressions made to his own wife by Mrs. Perry in her husband's absence but while she was living with him, concerning his conduct towards her. The offer was excluded.

The proposition will not admit of discussion. It is too vague and indefinite. No time is fixed and whether the expressions were of good or bad conduct or of any conduct material to the issue is not disclosed.

We next come to defendant's offer of a letter written by Mrs. Perry to her parents in August, 1879, which represented that her husband was unkind to her and to such a degree that she had become "sick of (her) home." It was objected to as "incompetent and immaterial," and the objection was sustained. The Court is not able to con-

cur in this ruling. The letter was a part of the *res gestæ,* and original evidence. Whether the plaintiff before the alleged enticement had by means of his cruel treatment caused his wife to be "sick" of her "home" was certainly a pertinent and material question. If the separation and loss of his wife's comfort, society and services was in consequence of his fault, he has no ground of action against the defendant, and this letter was a valid piece of evidence on the subject in so far as it would reveal and illustrate her state of mind and feeling towards him, and the same principle which let in the other letter in his favor was not irrelevant. The authorities seem to leave no doubt. 1 Greenl. Ev. §§ 102–108; Wharton's Ev. § 262; *Bennett v. Smith* supra; *Barnes v. Allen* supra; *Caughey v. Smith* 47 N. Y. 244; *Schuneman v. Palmer* 4 Barb. 225; *Palmer v. Crook* 7 Gray 418; *Winter v. Wroot* 1 Moody & Robinson 404; *Gilchrist v. Bale* 8 Watts 355; *Hadley v. Carter* 8 N. H. 40, and other cases before cited.

What has been said is sufficient to dispose of the case here, and since the circumstances on a new trial will probably be so far different as to call for different directions it is not expedient to say more in regard to the charge before us than that in the main certainly it appears to have been a fair one in view of the testimony which was allowed.

The judgment should be reversed with costs and a new trial granted.

The other Justices concurred.