Okey, J.
James Dick and Irena Holtz were married in this state, on April 5, 1877, in due form of law, but without the consent of Irena’s parents. They lived together as husband and wife until September 1, 1877, when Irena returned to her parents, Frederick Holtz and Elizabeth Holtz, with whom she continues to reside. Dick brought suit in the court of common pleas of Richland county, against Holtz and wife, charging that Elizabeth Iloltz, by a series of acts, caused the separation, and that the acts were malicious. The defense was that Irena abandoned her husband voluntarily, being under sixteen years of age at the time of such abandonment. There was a verdict and judgment in favor of Dick for $2,000, and a petition in error having been filed in the district court, that court, regarding the questions of law as difficult, reserved the cause for decision by this court.
We think it is clear from the record, which contains all the evidence, that while there was evidence tending to show that Irena was only fifteen years of age on May 1, 1877, she was, in fact, sixteen years of age at that time ; that from the time of the marriage (April 5, 1877), until the time of the separation (September 1, 1877), she cohabited with Dick as his wife on terms of affection; that Irena, neither during the time of such cohabitation, nor since, has made the slightest complaint of Dick in any respect, nor had she any cause of *25 complaint; that Dick was an industrious young man, belonging to a respectable family ; that Mr. and Mrs. Holtz resided on a farm which they owned, and Irena was their only child ; that the separation was not the voluntary act of Irena, nor was there any evidence fairly tending to show that it was voluntary, but it was caused and maintained by Mrs. Holtz alone, not with a view to the protection or happiness of Irena, but solely to gratify her (Mrs. Holtz’s) hatred of and ill-will toward Dick —Frederick Holtz, under the dominion of his wife, consenting to such acts ; and that Dick was entitled to recover; nor can we say, looking to the extraordinary character of the evidence, that the damages were excessive.
The inquiry is whether error of law intervened, and the questions thus presented we will now consider.
1. Anna Harbridge testified that the second week after the marriage, at the request of Mrs. Holtz, sh® wrote a letter to ■ Irena, to the effect that if she wished to see her father alive, she would come home. Irena came, and found her father at the barn at work. Subsequently the witness, at the request of Mrs. Holtz, told Irena that her mother would give her jewelry, a paisley shawl, a silk dress, and a gold watch and chain, if she would come home. When Irena came Mrs. Holtz told her she would disinherit her if she returned to Dick. Mr. Holtz Tvas not present at these conversations. The defendants excepted when they were admitted in evidence. But we think they were competent. The statutes in relation to the property of married women have not changed the common law as to the liability of husbands for the torts of their wives (Fowler v. Chichester, 26 Ohio St. 9); and in order to hold him liable for her acts, it was not necessary to show his presence at the place where the acts were done, or even his knowledge that they were contemplated, or that they had been committed.
2. Evidence was offered that in the fall of 1877, two young women, relatives of Mrs. Holtz, made a visit to her house, and while there they drove out several times accompanied by Irena. The defendants objected to the testimony. If the young women were of good character, the evidence was harmless, and we do not reverse judgments for errors which cannot be *26 prejudicial. But the evidence shows that Mrs. Holtz knew at the time that the young women were not of good repute, and hence in permitting such association, the wrong done to Dick was aggravated, and the possibility of a reconciliation rendered more hopeless. The pertinence of the evidence is more apparent when considered in connection with other facts of a very serious character, which we need not detail in this report.
3. Dick testified that he carried on a correspondence with his wife from the time she ceased to live with him until in May, 1879. He deposited letters to her in the gate post in Mr. Holtz’s yard, and she deposited answers in the same place. Three of the letters he produced on the trial, and he testified that they were in the hand-writing of Irena. One of the letters begins as follows: “Wednesday, May 28th, 1879. Dear Husband.” And it is signed “ Irena Dick.” One is dated in April, and is addressed in the same way. The other, without date, was addressed “ Kind Husband.” There was no evidence to show whether any person was present when the letters were written. The defendants objected that Dick was not competent to testify to his wife’s hand-writing, and also objected that the letters were not competent. The court, however, overruled the objection, permitted Dick to testify to his wife’s hand-writing, and also admitted so much of the three letters as is above set forth, and the defendants excepted.
Dick was a competent witness. The only limit to the competency of husband and wife is that they cannot testify “ concerning any communication made by one to the other, or an act done by either in the presence of the other, during coverture, unless the communication was made, or act done, in the known presence or hearing of a third person competent to be a witness.” Rev. Stats. § 5241. Biit Dick did not testify to a communication. He testified to a fact, namely, the hand-writing of Irena, and was competent for such purpose. And the parts of the letters offered were competent evidence, assuming, as we may, that the defendants had the privilege of offering the whole of either or all the letters. The words read tended to show that Irena was living separate from *27 her husband, not because she had no affection for him, but because it was the will of her mother she should do so ; and if the marriage had needed ratification, the letters tended to show ratification. The letters were competent, and we do not see any reason for confining the evidence to the parts of the letters which were read. Perry v. Lovejoy, 49 Mich. 529; Preston v. Bowers, 13 Ohio St. 1. Used for the purposes above stated, neither of the letters could be regarded as a “ communication” by the wife to the husband, within the object or purpose of the statute. The rule on the subject existing before the statute assumed its present form, would not have excluded the letters, as will appear from the above eases, and it is clear to us that that rule has not been limited by the present legislation, but enlarged.
4. Mrs. Holtz was a witness in her own behalf. After she had testified fully as a witness in her examination in chief, she was cross-examined. She was then re-examined, and on such re-examination, her counsel asked the following question ; “ When Irena came home what reason, if any, did she give why she did not live with James Dick? ” Counsel stated -at the time he expected to prove by her that when Irena came home she said she would not longer live with plaintiff, because she was satisfied she was not legally married to him, and also because the relations of the plaintiff did not use her well. The court l'efused to permit the evidence to be given, and properly. It was'stated more than sixty years ago, in an opinion of the judges, delivered in the House of Lords by Abbott, C. J., in Queen Caroline's case, 2 B. & B. 284, 294, as the well settled law, that “ counsel has a right, upon re-examination, to ask all questions which may be proper to draw forth an explanation of the sense and meaning of the expressions used by the witness on cross-examination, if they be in themselves doubtful, and also of the motive by which the witness was induced to use those expressions; but I think he has no right to go further, and to introduce matter new in itself, and not suited to the purpose of explaining either the expressions or the motives of the witness.” That rule has been re-asserted in numerous cases (1 Wkart. Ev. §§ 572, 575; 1 Green. Ev. §§ 467, 468), *28 and a relaxation of it in any case is but the exercise of discretion by the court, and not reviewable. The matter sought by this re-examination was in no way connected with anything appearing in the cross-examination, but, if proper, was evidence which should have been called for in chief, and no reason whatever was stated why it had not been brought out in chief. All though the ground upon which the evidence was rejected is not stated, we are bound to say it was excluded' upon the true ground, and we would not be warranted in saying that the court erred in this respect.
5. The remaining question relates to the law applicable to the case. A man properly demeaning himself is entitled to the society and assistance of his wife against all the world. Whoever unlawfully deprives him of such society or assistance is liable to an action. In estimating damages, however, each case must be determined by the circumstances attending it, and the motive of the intervening person must be ever kept in view. The cases may be properly divided into two classes. One where a villain interferes for the purpose of seduction, or the sole ground of interference is malice; the other where friends, usually parents, interfere for the protection of the wife and the offspring, if any. In the first class the husband, if without fault, is always entitled to damages; in the latter, if the motive of the intervening person was pure, and the appearances seemed to indicate necessity for interference, there can be no recovery, though no occasion for interference really existed. Much will be forgiven the parents > of a wife who honestly interfere in her behalf, though the interference was wholly unnecessary, and may have been detrimental to her interest and happiness, as well as that of her husband; still, where the motive is not protection of the wife, but hatred-and ill-will of the husband, it is no answer to his action for such interference that the offenders were his wife’s parents. Friend v. Thompson, Wright, 636, 639; Rabe v. Hanna, 5 Ohio, 530; Preston v. Bowers, supra; Schouler’s Hus. & W. § 64; Cooley’s Torts, 224.
Dick was twenty-one years of age at the marriage. Irena became sixteen on the first day of the month following the *29 marriage, and then, and for months thereafter, she and Dick cohabited together as husband and wife. The statute then in force provided : “ Male persons of the age of eighteen years, and female persons of the age of sixteen years, not nearer of kin than second cousins, and not having a husband or wife living, may be joined in marriage; provided, always, that male persons under the age of twenty-one years, and female persons under the age of eighteen years, shall first obtain the consent of their fathers, respectively, or in case of the death or incapacity of their fathers, then of their mothers or guardians.” 67 Ohio, L. 6; Eev. Stats. § 6384. By force of such cohabitation, the marriage became, when Irena arrived at the age of sixteen — she becoming sixteen on May 1,1877 — as completely valid as though she had been eighteen years of age when the marriage took place. The want of consent of her parents under such circumstances, could have no effect on the validity of the marriage. Nor is the result different if Irena, when she returned to her parents in September, 1877, was less than sixteen years of age. Clearly, if such was the fact, she might have lawfully separated from Dick, and she might have effectually revoked the marriage then or subsequently by marrying another man (Shafher v. The State, 20 Ohio, 1; McDowell v. Sapp, 39 Ohio St. 558), or, on arriving at sixteen years of age, she might have revoked the marriage without a second marriage. So, 'on arriving at sixteen years of age, although then living with her parents separate from her husband, she might effectually ratify the marriage, and the letters to him, already referred to; would be strong, and in the absence of opposing testimony, sufficient evidence of ratification. But -in our opinion Irena at the time of the marriage, had not only arrived at the common law age of consent, but she was a woman and not a mere child, even if we could be led to believe she was less than sixteen at the separation. And as James Dick was living happily with his wife, and as it was the interest and desire of both that they should continue- to so live, we deny that the parents had authority to cause them to separate on the mere ground that she had not arrived at the age of sixteen years and the marriage was without such parents’ consent; and the *30 motive having been malice toward Dick and not protection to Irena, we hold that the action was maintainable, even if her age was as her parents claimed it to be.
It is sufficient to add, that the charges requested were wholly at variance with the law as we have stated it to be, and therefore they were properly refused ; and that the charge as given was not prejudicial to the plaintiff’s in error.
I confess to some reluctance to the entry of judgment against Frederick Holtz. But if the law as to the liability of the husband for the tort of his wife is wrong, the evil must be remedied by the legislature and not this court.

Judgment affirmed.