## SWEIKHART *v.* HANRAHAN.

1. WITNESSES — MARRIAGE — PRIVILEGED COMMUNICATIONS—ADULT-ERY—CRIMINAL CONVERSATION—ALIENATION OF AFFECTIONS.

Under the provisions of 3 Comp. Laws, § 10213 (5 How. Stat. [2d Ed.] § 12857), prohibiting either spouse from giving testimony as to communications made during marriage, the wife was a competent witness in behalf of her husband, with the consent of both, in a suit for alienation of her affections.[1]

2. SAME—EVIDENCE.

It must also be *held* that the husband was not improperly permitted to give testimony relating to statements or communications made to him by the wife during the existence of the marriage relation, where such communications had a tendency to prove the state of the wife's feelings towards the husband.

3. SAME—HEARSAY—EVIDENCE.

The objection that defendant was not present when the statements were made was not ground for excluding the evidence, which was offered to prove her state of mind toward the husband.

4. HUSBAND AND WIFE — ALIENATION OF AFFECTIONS—DAMAGES—ELECTION OF COUNTS—ADULTERY.

While the husband may not be permitted to recover damages for illicit intercourse between defendant and his wife, in a suit for alienating her affections, without alleging and offering evidence in support of the charge of adultery and being limited by the rules of evidence which apply to the trial of such an issue, where plaintiff abandoned the second and third counts of his declaration in which he charged adultery, and proceeded to recover under his claim for alienation of affections, the judgment was not subject to reversal on error on the ground that

---

[1] As to the competency of one spouse to testify as to the misconduct of the other spouse in an action for alienation of affections, see note in 39 L. R. A. (N. S.) 317. And on the question whether communications between a husband and wife tending to show affection, or the contrary, are privileged, see note in 2 L. R. A. (N. S.) 708.

plaintiff had the advantage of the charge of adultery, because on the trial his counsel stated in the presence of the jury that he abandoned the count containing the charge of adultery, unless it becomes apparent that an improper result was reached by reason of suggestions or statements so made in the trial court.

5. SAME—EVIDENCE—CRIMINAL CONVERSATION—PLEADING.
    Where the testimony introduced upon the trial tended to support the charge of alienating the wife's affections, and no proof of adultery was presented, the court did not err in not striking out her testimony as incompetent because the action was predicated upon adultery and the court did not err in refusing to reject testimony of either husband or wife as incompetent.

6. SAME—SUBSEQUENT CONDUCT.
    Evidence showing defendant's conduct after he and the wife of plaintiff had parted and suit had been commenced was competent in support of the charge of alienation of affections.

Error to Ottawa; Cross, J. Submitted November 11, 1914. (Docket No. 173.) Decided January 29, 1915.

Case by John L. Sweikhart against William A. Hanrahan for criminal conversation, alienation of affections and other alleged wrongs. Judgment for plaintiff. Defendant brings error. Affirmed.

*Daniel F. Pagelsen* (*Charles O. Smedley,* of counsel), for appellant.

*Coburn & Misner,* for appellee.

In the first count of the declaration plaintiff alleges that the defendant, intending to injure him and deprive him of the affection, comfort, fellowship, society, aid, and assistance of his wife, Ethel, on March 2, 1913, and on divers other occasions thereafter, and before the beginning of this suit, at the city of Grand Rapids, the city of Grand Haven, and other places,

carried on a secret correspondence with plaintiff's wife, secret telephone conversations, met her clandestinely, walked and rode with her, met her at his rooms nearly every Sunday evening, gave her presents, and by various other acts and devices alienated her affections and induced and persuaded her to leave plaintiff's home, by means whereof, etc., etc. In the second count plaintiff alleges that with the same purpose defendant, at various times between the dates alleged in the first count, forcibly assaulted plaintiff's wife and by force compelled her to have with him sexual intercourse, whereby plaintiff was damaged in his reputation, suffered from injured feelings, and was greatly humiliated. In a third count plaintiff alleges that, intending to alienate the affections of his said wife, defendant seduced and debauched her, and, professing to think much of plaintiff's said wife, destroyed and alienated her affection for the plaintiff, who thereby lost her aid, society, comfort, etc., etc. In this count plaintiff also sets out the alleged manner of defendant's wooing of his wife, who, he alleges, committed the sin of incontinence with defendant, came to love him and to consent to be debauched by him. The defendant pleaded the general issue.

This suit appears to have been begun on or after June 25, 1913, by declaration. It is made to appear by the testimony of plaintiff and his wife that they lived and cohabited together until some time in April, 1913, and occupied the same apartments, but did not cohabit, from April until June 12, 1913. On or about June 12, 1913, the wife went from Grand Haven, her home, to Sheboygan, Wis., the home of her parents, taking her child, a little girl, with her. Marital relations were resumed in October, 1913. Plaintiff and his wife both testified at the trial, and it is not probable that, without her testimony, plaintiff would have succeeded in his suit.

In the opening statement of the attorney for the plaintiff he did not directly—he contends that he did not indirectly—claim that illicit sexual relations had existed between defendant and plaintiff's wife. He did say:

"We will show you that on nearly every Sunday night during certain months, except when he was ill for a while—I don't just recollect when it was—she would go up to his rooms and visit him. We will show you that this defendant asked her to leave home, and that through his influence she refused to cohabit with the plaintiff in this case on or about the 1st of April, 1913, and finally when Jack found out—or Mr. Sweikhart found it out—she told him to go ahead and get a divorce, she didn't care. * * * We will show you that she finally found out that Mr. Hanrahan was not sincere, and that some time in October of last year she resumed the marital relation with Mr. Sweikhart, and now they are living together in the city of Milwaukee. We will show you that Mr. Sweikhart again resumed the marital relation primarily for the sake of the child; that that was his main reason in going back to her and living with her again."

Plaintiff called the defendant as his first witness; examined him about many matters said to have occurred after suit was begun and in respect to the main issue. He was asked if he had not invited Mrs. Sweikhart to his rooms, and many questions concerning his conduct with her, whether he had not furnished her with money and promised her marriage. Plaintiff was then offered as a witness. Having answered that he was the plaintiff, the following occurred:

"*Mr. Pagelsen:* We want to object to any—we want to raise a question of law in regard to the husband testifying. Perhaps we better discuss it not in the presence of the jury.

"*The Court:* You understand the rule on that proposition.

"*Mr. Coburn:* I do. I will make a statement for the purpose of—

"*Mr. Pagelsen:* Before anything of that kind is done, we want this jury excluded. There is apt to be remarks that might be prejudicial to either side, and I don't think it would be fair to have—

"*Mr. Coburn (interrupting):* We will abandon the adultery count, and the criminal count—

"*Mr. Pagelsen (interrupting):* Just a moment.

"*Mr. Coburn:* I think I have a right to make that statement.

"*The Court:* If there is an objection of that kind, you should wait.

"*Mr. Pagelsen:* I want to take an exception to the remarks of counsel after I've made my motion.

"*The Court:* The jury will pay no attention to those remarks at all.

"*Mr. Pagelsen:* I will ask to have the court exclude the jury while we argue this question.

"*The Court:* Gentlemen, you may enter your jury room.

"(The jury here retire from the courtroom.)

"*Mr. Coburn:* I desire to state right now, if I did not make myself clear in the opening statement to the jury, that we do not rely on any adultery in this case nor on any criminal conversation whatever, and I make that statement for the benefit of counsel now, and that we will rely on the one count in the declaration for alienated affections, and not on the criminal conversation part of the charge.

"*Mr. Smedley:* Then you don't state what count you abandon. There is three counts.

"*Mr. Coburn:* We will abandon the second and third counts. We will do that on account of not being able to get some witnesses that we relied on, one in particular, who has since died. Mr. Smedley knows about it.

"*Mr. Smedley:* The first count is predicated on adultery. It is so intimately connected with the second and third counts that it is practically one count. He says in the first count that the defendant (reads).

"*The Court:* He has abandoned the second and third counts.

"*Mr. Smedley:* Yes. Now the first count is predicated on adultery. Why were those clandestine meet-

ings, and why did she go to his room on Sunday night? Almost every Sunday night she met him clandestinely at his rooms above the saloon. It is idle to say they don't claim adultery, and all they claim is alienation of affections.

"*The Court:* I think, where the adultery count is abandoned, the husband has right to testify. Call the jury.

"*Mr. Smedley:* An exception."

Plaintiff was asked whether he consented that his wife give testimony and answered affirmatively. Mrs. Sweikhart was called as a witness and was examined without objection as to her competency. When her direct examination had been concluded, the court was moved to strike out her testimony as incompetent because the cause of action made out was predicated on adultery. The motion was overruled. Plaintiff rested, and the defendant moved for a directed verdict on the ground that nothing more than a partial alienation of affections had been made out, and that for it no cause of action accrued to the plaintiff. The motion was denied.

In giving their testimony, plaintiff and his wife both related communications made by one to the other, not in the presence or hearing of defendant. The questions mainly discussed by appellant are indicated by the foregoing statement.

The cause came on for argument in this court on November 11, 1914. When counsel for the appellant urged, as they had urged in the brief, that some of the testimony of the plaintiff was incompetent, unless his wife consented to his giving it, and that she had not consented, it was replied that the wife was present in court, was a witness for the plaintiff, and her consent may be presumed. Thereafter a motion was made in this court for an order permitting the record to be amended, so as to show that, upon the order of the trial court, all witnesses were excluded from the

courtroom, except as they were called to testify. With the motion certain affidavits and the certificate of the clerk were also filed. Counter affidavits were filed, the effect of them being that, if the order was made, it was not obeyed, and that the wife of the plaintiff was actually present in court while testimony other than her own was given. A question of fact is thus presented, which the trial court might or might not be able to satisfactorily determine.

OSTRANDER, J. (*after stating the facts*). 1. "Nor shall either, during the marriage or afterwards, without the consent of both, be examined as to any communication made by one to the other during the marriage," is the language of the statute. 3 Comp. Laws, § 10213 (5 How. Stat. [2d Ed.] § 12857). Objection was not made to the giving of testimony upon this ground, but the objection was that the communication was not in the presence of defendant. The statute evidences a rule of public policy; the privilege being the privilege of the spouse making the communication, the lips of both being sealed, unless both, otherwise, personally consent. The wife is not here objecting to the failure to observe the rule.

The husband's consent will be presumed, since he testified to the communications. I think it must be said that the wife, also, personally consented. She was living apart from her husband, and in another State, when the action was begun. It appears that whether she would or would not consent to return to this State to give her testimony was a subject which interested both parties to the suit. At the time of the trial she was living with her husband in Milwaukee, Wis. She attended the trial, and it will be presumed that she knew the nature of the accusations made in her husband's declaration. In substance and effect her testimony, given with the express consent of her husband, does not differ greatly from that

which was given by him concerning their relations, how they were affected by her conduct, and what she said to him. Her consent would therefore be evident, if the record were amended, as desired by appellant. Therefore the motion to amend will be denied.

As to the objections based upon the fact that the defendant was not present when the statements were made, they are overruled upon the authority of *Perry* v. *Lovejoy*, 49 Mich. 529 (14 N. W. 485); *McKenzie* v. *Lautenschlager*, 113 Mich. 171 (71 N. W. 489). The testimony was introduced to prove the state of the wife's feelings towards her husband.

2. It is plain that, however willing he may be to do so, a husband should not be permitted to recover damages for the carnal debauching of his wife by another without tendering the issue of criminal conversation and being bound by the rules of evidence which apply to the trial of the issue. The distinction between actions for damages for criminal conversation and those for alienation of affections, where such conduct is not charged, is pointed out in *Perry* v. *Lovejoy, supra,* 49 Mich., at pages 532, 533 (14 N. W. 485).

It is the contention of appellant, and the principal one, that the plaintiff has in this case made out by his testimony and has had the advantage of the more serious charge, without alleging it and without affording him the opportunity to meet it. The statement of counsel for plaintiff, in the presence of the jury, that plaintiff abandoned the counts charging adultery was calculated, even if it was innocently made, to acquaint the jury with the fact that the more serious charge had been made. They could only have speculated about the reason for withdrawing it, and it is evident that the result of whatever speculation was indulged might have been favorable or unfavorable to defendant, according to the course of reason-

ing pursued. It is not the purpose of trials of civil actions to invite or encourage such speculation, however it may result. Evil effects of such suggestions, or statements, may be so apparent as to compel this court to reverse a judgment. I think they are not apparent here, and that, on the contrary, it is improbable that defendant was prejudiced by the statement of counsel.

The testimony offered by plaintiff tended to support the charge contained in the first count of the declaration. None of it should have been rejected upon the ground that it was not competent for this purpose, namely, to prove alienation of affections unaccompanied by criminal conduct. See *Merrill* v. *Leisenring*, 149 Mich. 423, 428 (112 N. W. 1072). No error was committed in refusing to reject it, nor in refusing to rule that the husband and wife were not competent to give it.

3. I have examined the other errors assigned and argued. Testimony showing the conduct of defendant after plaintiff's wife had left him, and after this action was begun, was competent and was material. If the wife is to be believed, she was willing to leave her husband for defendant, relying upon defendant's promises to take care of her and, finally, to marry her. If she is believed, her purpose in this direction was halted because she believed defendant to be insincere. And while a defendant is in parlous circumstance when a husband and wife unite in such an action as this, I am not satisfied that prejudicial error is made to appear.

The judgment is affirmed.

BROOKE, C. J., and MCALVAY, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.