GILMORE, Respondent, v. GILMORE et al, Appellants.

(173 N. W. 865).

(File No. 4210.   Opinion filed August 15, 1919.)

1. Evidence—Alienation of Affections—Husband's Letter to Wife, Why He Had Written It, Competency.

In a suit by wife against husband's parents for damages for alienation of husband's affections, held, that a question put to plaintiff as to what her husband said to her as to why he had written the letter and "why he done as he did," was incompetent as calling for hearsay testimony; that the contention that the declaration was in nature of a verbal act indicative of his feelings at time of his subsequent abandonment of her was untenable.

Gates, J., and Whiting, J., concurring specially.   McCoy, J., dissenting.

2. Same—Showing Defendant's Declarations Concerning Letter to Wife, by Third Party re State of Mind, Competency—Rule Stated—Res Gestae Defined.

The rule is well settled that statements and declarations of a person may be shown by a third party, when the feelings or state of mind of the declarant are material to issues; and whenever bodily or mental feelings are material, the usual expressions thereof are original and competent evidence. Such declarations are regarded as verbal acts, and, when relevant, are competent, but, to be admissable, they must be in nature of res gestae. They must accompany the act they are supposed to characterize and have been calculated to unfold the nature and quality of the facts they were intended to explain, and so to harmonize therewith as obviously to constitute one transaction; surrounding circumstances to be given in evidence with the principal fact, and the declaration must grow out of the principal transaction. It must be contemporaneous with the conduct, or must accompany the act. Under this ruling, said evidence was pure hearsay. So held, concerning a letter from husband to wife prior to the conversation referred to, but not written until after the husband had had the alleged conversation with defendants in which they were claimed to have as-

sailed plaintiff's character; the letter not indicating loss of husband's affection, the intention to abandon her having been formed at a subsequent time and for some other cause than that assigned by her.

Gates, J., and Whiting, J., concurring specially. McCoy, J., and Smith, P. J., dissenting.

**3.  Same—Disparaging Remarks re Plaintiff to Third Parties, Not Communicated to Husband, Incompetency.**

In a suit for damages against defendant's parents for alienation of plaintiff's husband's affections, held, that evidence of disparaging remarks concerning plaintiff's character to parties other than her husband, it not being shown that they were brought to husband's knowledge, is incompetent.

**4.  Evidence—Directing Verdict—Sufficiency of Evidence.**

Where, at close of plaintiff's case, there was no competent evidence to support either of plaintiff's causes of action, defendant's motion for directed verdict should have been granted.

Appeal from Circuit Court, Corson County. HON. RAYMOND L. DILLMAN, Judge.

Action by Emma Gilmore, against Silas A. and Stella Gilmore, to recover damages for alienation of affections of plaintiff's husband. From a judgment for plaintiff, and from an order denying a new trial, defendant's appeal. Reversed.

*Clay Carpenter,* and *Howard G. Fuller,* for Appellants.

*Frank McNulty,* and *Robert Pearson,* for Respondent.

(1)  To point one of opinion, Appellants cited:

3 Elliott on Evidence, Section 1648; White v. Ross, 47 Mich. 172, 10 N. W. 188; Leucht v. Leucht, 129 Ky. 700, 112 S. W. 845, 130 Am. St. Rep. 486.

Respondent cited:

Respondent cited:

Hillers v. Taylor, (Md.) 81 Atl. 286.

(2)  To point two, Appellants cited:

Cochran v. Cochran, 196 N. Y. 86, 89 N. E. 470, 24 L. R. A. (N. S.) 160.

Respondent cited:

Lockwood v. Lockwood, 67 Minn., 476, 70 N. W. 784; White v. White, 140 Wis. 538, 122 N. W. 1051; Perry v. Lovejoy, 49 Mich. 529, 14 N. W. 486; Sweikhart v. Hanrahan, 184 Mich. 201, 150 N. W. 833; Sec. 1649, Vol. 3, Elliott on Evidence.

POLLEY, J.  This action is brought for the recovery of damages alleged to have been sustained by plaintiff because of

the alienation of the affections of her husband by the defendant. Plaintiff and one W. C. Gilmore were married in 1910, and defendants are the father and mother of said W. C. Gilmore. The complaint alleges that in 1915 the defendants circulated certain false reports reflecting upon the virtue and chastity of the plaintiff, and that, as a result of such reports, plaintiff's said husband deserted and abandoned her, and that she was thereby deprived of his support, comfort, and affection. Verdict and judgment were for plaintiff, and from such judgment, and an order overruling their motion for a new trial, defendants appeal.

While the respondent was on the witness stand the following question was put to her by her counsel:

"You may state what your husband said to you in regard to why he had written this letter and why he done as he did."

This was objected to on the ground, among others, that it called for hearsay testimony. The objection was overruled, and the witness answered that her husband told her that his parents had told him that he (plaintiff's husband) was not the father of plaintiff's little boy, then only a few months old. Appellants then moved to strike out the answer on the same ground as urged in the objection. This motion was denied, and this ruling is assigned as error. The facts disclosed by this testimony are regarded of vital importance to respondent's case, and it is contended by respondent that such testimony was admissible for the purpose of showing the reason for certain conduct on the part of respondent's husband; while, on the other hand, it is contended by appellant that such testimony is pure hearsay and should have been excluded by the court.

[1, 2] Respondent contends that this declaration of her husband was in the nature of a verbal act indicative of the state of his feelings at the time of his abandonment of her, and in support of her contention cites the following cases: Hardwick v. Hardwick, 130 Iowa, 230, 106 N. W. 639; Sessions v. Little, 9 N. H. 271; Sexton v. Sexton, 129 Iowa 487, 105 N. W. 314, 2 L. R. A. (N. S.) 708; Baker v. Baker, 16 Abb. N. C. (N. Y.) 293; Williams v. Williams, 20 Colo. 51, 37 Pac. 614; Nevins v. Nevins, 68 Kan. 410, 75 Pac. 492; Horner v. Yance, 93 Wis. 352, 67 N. W. 720; Perry v. Lovejoy, 49 Mich. 529, 14 N. W. 485; McKenzie v. Lautenschlager, 113 Mich. 171, 71 N. W. 489. The

rule is well settled that statements and declarations of a person may be shown by a third party when the feelings or state of mind of the person making such statements are material to the issues. "Wherever the bodily or mental feelings of an individual are material to be proved, the usual expressions of such feelings are original and competent evidence. Those expressions are the natural reflexes of what it might be impossible to show by other testimony. If there be such other testimony, this may be necessary to set the facts thus developed in their true light, and to give them their proper effect. As independent, explanatory, or corroborative evidence, it is often indispensable to the due administration of justice. Such declarations are regarded as verbal acts, and are as competent as any other testimony, when relevant to the issue. Their truth or falsity is an inquiry for the jury." Travelers' Ins. Co. v. Mosley, 8 Wall. 397, 19 L. Ed. 437. But such declarations, to be admissible, must be in the nature of res gestae. They "must have been made at the time of the act done, which they are supposed to characterize, and must have been well calculated to unfold the nature and quality of the facts they were intended to explain, and so to harmonize with them as obviously to constitute one transaction." Meek et al. v. Perry et al., 36 Miss. 261. "Such declaration derives credit and importance as forming a part of the transaction itself, and is included in the surrounding circumstances, which may always be given in evidence to the jury with the principal fact. There must be a main or principal fact or transaction, and only such declarations are admissible as grow out of the principal transaction, illustrate its character, and contemporary with it and derive some degree of credit from it." Lund et al. v. Tyngsborough, 9 Cush. (Mass.) 36. "According to the authorities, if such declaration was made at the time the act was done, and is calculated to explain the character, nature, or quality of the facts constituting the act and its effects, so as to unfold and harmonize them as parts of the same transaction, then such a declaration must be regarded as a part of the res gestae, and may always be shown to the jury along with the principal facts." Frink & Co. v. Coe, 4 G. Greene (Iowa) 555, 61 Am. Dec. 141. To form a part of the res gestae, such declarations "must have been made at the time of the act done, which they are supposed to characterize, and have been

well calculated to unfold the nature and quality of the facts they were intended to explain, and so to harmonize with them as obviously to constitute one transaction." Enos v. Tuttle, 3 Conn. 247. This subject is treated at length by Prof. Wigmore, and, at section 1776, that author says:

"Since the words are used only as parts of the whole act, filling out and giving significance to the conduct, it is obvious that the words must be contemporaneous with the conduct, or, in the usual phrase, must accompany the act."

Tested by these rules, the evidence in question was pure hearsay.

The letter referred to in the question had been written by the husband and received by the plaintiff some two weeks prior to the conversation referred to in the question, but had not been written until after the husband had had the alleged conversation with defendants in which defendants are claimed to have assailed plaintiff's chastity and virtue. There is nothing in the letter, however, that shows any loss of affection on the part of the husband, nor was there anything said or done by him during said conversation to indicate that he had lost confidence in her, or intended to abandon or desert her. So far as anything said to the plaintiff by her husband is concerned, the intention to abandon her was formed at some subsequent time, and for some cause other than that assigned by her. This being the case, the words attributed to him by plaintiff in answer to the question complained of did not accompany the act of abandoning her, nor constitute any part thereof, nor was it contemporaneous with that act.

[3] There was some evidence introduced tending to show that one or both of the defendants had made disparaging remarks relative to plaintiff's character to parties other than her husband, but it was not shown, nor even intimated by any evidence in the case, that the making of such remarks was ever brought to the knowledge of her husband. Such remarks, therefore, could have had no effect upon his affection for plaintiff, and could not have influenced him in abandoning her; and, for that reason, such evidence was wholly incompetent for any purpose.

[4] At the close of plaintiff's case, there was no competent evidence before the jury to support either of her causes of ac-

tion, and defendant's motion for a directed verdict should have been granted.

The judgment and order appealed from are reversed.

GATES, J. (concurring specially). I concur in the view that the judgment and order appealed from must be reversed for the reason that there was nothing in the letter written by the husband to plaintiff indicative that his affection for plaintiff was at that time alienated. The letter in question is as follows:

"Mobridge, South Dakota, Nov. 13, 14. Dear Emma: I have been waiting long enough to write what I am going to, and hate to write it at the present time but think it for the best. It isn't because there is some one else that I am asking this, but because I haven't been what I would like to have you think I am. There has been a deal pulled off here that I am getting the blame for, and think that we had better have a separation before anything happens. I don't mean a divorce as I never expect to get one and don't ask it, but think that we had better sign papers of separation at once as it will be better all around. I can't explain at present what this is. I wish that I could. I will admit that since I had a misunderstanding last fall I have been living a pretty fast life, and regret it very much and if 1 knew then what I do now there would not be anything like this to write, but think that it is too late now to ask you to care for me any more and as I have found out what I am up against now, I am sure of it until I can get it straightened out. I have hard times thinking of what to say as I want to tell you all about it but can't at present and only hope that I can prove my innocence and then tell you in person. Well dear I can't write any more now as this is bad enough and you will never know what it has cost me to have to write it. Please forgive me for some of the things that I have done and if I have a chance I will tell you the whole story. Take good care of the boys and don't let them think too hard of their father is all I ask. Please let me hear from you once and try and think the best of me if possible. Yours as I used to be, Will."

It rather shows penitence for his own wrongdoings, and that the estrangement between them was because of his acts, not hers. His suggestion that there be a separation cannot be attributed

to any claimed wrongdoing on her part. In other words, there was then no "state of mind."

Even if there had been a "state of mind," the evidence of what he told her two weeks later would only have been admissible to show such "state of mind," not to show who caused it. Elmer v. Fessenden, 151 Mass. 359, 24 N. E. 208, 5 L. R. A. 724.

If that testimony had been excluded there would have been an entire absence of any testimony connecting defendants with the claimed "state of mind" of the husband. The admission of such testimony was clearly prejudicial, and for that reason the judgment and order appealed from should, in my opinion, be reversed.

WHITING, J. (concurring specially). I concur in the result reached by Judge POLLEY. Plaintiff, in order to recover for defendants' alleged alienation of her husband's affections, was bound to establish: (a) The *alienation;* (b) The *reason* for such alienation, namely, that he had been led to believe plaintiff had been untrue to him; (c) the *cause* bringing about such belief, namely, the statements made to him to the effect that she had been untrue; (d) that defendants were the *source* from which or the *medium* through which, such "cause" reached the husband.

Any competent evidence tending to prove any one of these four necessary matters was material and admissible. I agree with Judge GATES that the letter of November 13, 1914, did not tend to prove the "alienation," and certainly it proved no other one of the three essentials to this cause of action. It follows that no explanation of such letter was material. But, even if the letter itself had contained any material matter, no verbal explanation thereof, given two weeks after it was written, would be competent as a "verbal act," and this for reasons fully stated by Judge POLLEY. It would have been entirely competent for plaintiff to have testified as to the explanation which her husband made as to the "cause" of or "reason" for his changed feelings toward her, so long as she refrained from testifying as to his statements in relation to the "source" or "medium" through which the "cause" reached him; but her evidence as to his statements was purely hearsay in so far as it touched on the question of the "source" or "medium" through which the "cause" reached the husband. The dissenting opinion admits this. As said in Elmer v. Fessenden:

"The * * * testimony was not competent to prove that the defendant did tell the workmen the story."

I agree fully with the holdings in all the opinions referred to in the dissenting opinion.

A cause wherein the record presented a situation identical with that before us was that of McGowan v. Armour, 248 Fed. 676, 160 C. C. A. 576, appealed from the district of South Dakota. In this case the court used language so clear and convincing, and so peculiarly pertinent to the question now before us, that I cannot refrain from quoting same:

"The vice of the evidence which was received in the present case is that plaintiff, who was testifying, did not hear the defendant make the statements. The statements were made to her husband. Her husband, however, was not a witness. He never told the court under oath, and subject to cross-examination, what the defendant's statements were to him. On the contrary, defendant's statements were all run through one more conduit, namely, the plaintiff. She was permitted to tell what her husband told her that defendant had said to him. It is entirely plain that this went beyond any permissible rule. Anybody who heard Mrs. McGowan make statements expressive of her affections for Mr. Armour could testify as a witness before the court to those statements. That, however, is as far as the hearsay rule has been relaxed in such cases. The vice of the evidence received by the trial court is that it was passed through one more messenger, and that messenger was plaintiff, whose mind was clouded by every motive of interest and passion to distort the hearsay statements which she claimed to report. In the quest of Armour's feelings, he was converted into a general agent of the defendant to make the most damaging admissions on her behalf. To permit that was to lose sight of substantial justice in the pursuit of a dangerous and purely incidental matter. To say that the vice of this practice can be cured by admonitions to the jury as to the restricted purpose for which the evidence is received is to indulge a purely academic view of the lay mind. The verdict that was rendered in the present case is the best proof of the fallacy of such confidence.

"The errors to which we have called attention were funda-

mental, and, in our judgment, resulted in a complete miscarriage of justice."

In the dissenting opinion it is said that defendants' connection with this "cause" was "established by the testimony of Hayward and others." With this I cannot agree. There was not a word of testimony upon this point from "others". Hayward testified that, in February, 1915, long after the alleged statement to the plaintiff by her husband as to what defendants had told him, defendants made statements to him questioning the parentage of plaintiff's youngest child. This testimony of Hayward stands as the only evidence upon which respondent can rest any claim that defendants were shown to be the "source" or "medium" through which the "cause" reached the husband. · I confess my inability to see in Hayward's testimony anything from which the jury would have a right to infer that the parents had made similar statements to the husband, and there was no evidence that Hayward advised the husband of what the husband's parents had told him. Neither a court nor a jury would be justified in inferring, from the mere fact that defendants made such statements to Hayward, that they also made them to the husband, any more than they would have the right to infer that Hayward advised the husband of what his parents had told him.

McCOY, J. (dissenting). The decision in this case hinges on the admissibility in evidence of certain testimony relating to a conversation between plaintiff and her husband. The testimony clearly shows that the husband had become estranged from his wife, which entrangement or alienation was evidenced by many acts, one of which acts was a certain letter written to her. The gist of this action is the estrangement or alienation of the plaintiff's husband from her, alleged to have been caused by a false and slanderous story, originated and circulated by the parents of the husband. The entrangement caused thereby was a continuing mental condition, was continual mistreatment of his wife, and a seeking by him to cast her off and bring about a separation. There was plenty of evidence in this case that the defendants originated and circulated this false story about the plaintiff. Independent testimony, outside of the statements of the husband, was adduced, showing that defendants originated and circulated the false and slanderous statement concerning plaintiff. It ap-

pears that the husband and wife were not living together at the time this conversation in question occurred.   This conversation related to the estrangement that then existed between the husband and wife—it related to and was a part of the then existing res gestae of the subject-matter of this action.   The question propounded to the witness was:

"You may state what your husband said to you then in regard to why he had written this letter, and why he had done as he did?"

This question was objected to as hearsay, not in the presence of, and not binding on defendants.   The objection being overruled, the plaintiff in substance said that her husband said in answer to said question that defendants had told him that he was not the father of the plaintiff's child, then a few months old.   It seems to be the view of the majority opinion that, while this evidence was competent to show the husband's state of mind, it was not competent to show what caused such state of mind; in other words, it was not competent to connect the false statements of defendants as the cause which produced the husband's said state of mind.   I am of the view that this contention is not tenable.   I am of the view that this evidence was a part of the res gestae, was within the verbal act doctrine, and was perfectly competent for the purposes of showing what was the cause that produced the injury to plaintiff, namely, the alienation of the affections of her husband.   The injury complained of in this case was the alienation of the husband's affections; in other words, the injury was the estranged state of the husband's mind.   This testimony in question was not evidence of the origination and circulation of the false stories by defendant, as to that proposition it was hearsay.   That defendants did originate and tell such false story is amply proven and established by the testimony of Hayward and others, but to connect and show such false story to have been the cause of the said injury to plaintiff the evidence in question was competent.   This rule is sustained by what I consider the very best of judicial authority.   In the case of Elmer v. Fessenden, 151 Mass. 359, 24 N. E. 208, 5 L. R. A. 724, the decision of the Massachusetts Supreme Court, in an opinion by Holmes, J., sustains this view.   In that case the plaintiff was a manufacturer employing

·many workmen, and defendant was a member of a board of ⸝ health. The plaintiff brought suit against the defendant for telling a false and slanderous story to the effect that plaintiff used arsenic in his manufactory in such manner as to endanger his workmen, which false story plaintiff alleged alienated and caused his workmen to leave him. Precisely the same principle is involved as in the case at bar. The superintendent of the plaintiff, who had charge of the workmen, was called as a witness, and asked what the workmen said as to their reason for stopping work. This evidence was excluded. Another witness was asked, "From whom was this report stated to you to have come, if from any one?" Objection was also sustained to this testimony. In rendering this opinion reversing the ruling of the trial court excluding this testimony, the Supreme Court said:

"It was a part of the plaintiff's case that the cause of his workmen's leaving his employment was the defendant's false story. If, as may be assumed, the excluded testimony would have shown that the workmen, when they left, gave as their reason to the superintendent that the defendant had told them that the board of health reported arsenic in the silk, the evidence was admissible to show that their belief in the presence of poison was their reason in fact. Lund v. Tyngsborough, 9 Cush. ['Mass.] 36, 41, 43; Aveson v. Kinnaird, 6 East. 188, 193; Hadley v. Carter, 8 N. H. 40, 43; U. S. v. Penn, 13 N. B. R. 464, 467 [Fed. Cas. No. 16,025]. We cannot follow the ruling at nisi prius in Tilk v. Parsons, 2 Car. & P. 201, that the testimony of the persons concerned is the only evidence to prove their motives. We rather agree with Mr. Starkie that such declarations, made with no apparent motive for misstatement, may be better evidence of the maker's state of mind at the time than the subsequent testimony of the same persons. Starkie, Ev. (10 Amer. Ed.) 89. As a rule, such declarations are not evidence of the past facts which they may recite. The cases in which they have been admitted to prove the cause of a wound or injury, when the declarations were made at the time, or immediately after the event, if not exceptions to the general rule, at least mark the limit of admissibility. Commonwealth v. Hackett, 2 Allen [Mass.] 136, 140; Commonwealth v. McPike, 3 Cush. [Mass.] 184 [50 Am. Dec. 727]; Insurance Co. v. Mosley, 8 Wall. 397 [19 L. Ed. 437]. The excluded testi-

mony was not competent to prove that the defendant did tell the workmen the story. As to that it was mere hearsay, and was not within the scope of the special reasons which led to the decisions last cited. Roosa v. Loan Co., 132 Mass. 439; Chapin v. Marlborough, 9 Gray [Mass.] 244 [69 Am. Dec. 281]; Bacon v. Charlton, 7 Cush. [Mass.] 581, 586; Aveson v. Kinnaird, ubi supra; People v. Thornton, 74 Cal. 482, 486, 16 Pac. 244. It is admitted, however, that there was independent testimony that the defendant spoke to the workmen, and therefore the exceptions must be sustained."

It is very apparent that this Massachusetts decision is based on the ground that the statements of the workmen to the superintendent of plaintiff were competent evidence to connect the false story originated by defendant with the state of mind of the workmen that produced the injury complained of; that such evidence was hearsay and incompetent as to the original telling of such false story, but was competent for the purpose of showing what caused the alienation. In the case at bar, the statements of the husband to the wife were competent to show that the false story of defendants produced the alienated state of mind, but was not evidence as to the origin of the false story itself—that was proven by Hayward and others.

There has been much contention in this case that the direct evidence of the husband was the only method of proving what caused his alienated state of mind; that the plaintiff was bound to call him as a witness in order to make out a case against the defendants. The foregoing opinion of the Massachusetts court effectually disposes of that proposition. If a plaintiff in such a case could establish what produced the alienation only by calling the husband as a witness, such a plaintiff could practically be without a remedy.

In this action, to make out her case plaintiff established the origin of the false story of defendants by Hayward and others, by the statements of the husband, made at the time he was casting her off, and giving her to understand that the society of prostitutes was preferable to hers, that he was acting as he did by reason of a false story told him by defendants. I am of the view that the plaintiff made out a good and sufficient prima facie cause of action entitling her to judgment. These statements of

the husband show the false story of defendants to have been the cause of the injury to plaintiff. If this does not make out a case, in what other manner could one be made out? It matters not how this false story got to the ears of the husband; whether directly from defendants or through others. The testimony shows defendants originated the false story, and that it was such story that caused the alienation. This court should not establish a rule that would leave a plaintiff in such a case practically without a remedy. Section 1714, Wigmore's Evidence, fully sustains the proposition that the evidence in question was res gestae. Sections 1729 and 1730, also fully sustain the admissibility of the evidence in question. A thorough reading of subdivision 2, § 1729, of Wigmore, and the notes thereto, will clearly demonstrate said testimony to be res gestae. The case of Baker v. Baker, 16 Abb. N. C. (N. Y.) 293, specifically holds that the declarations of the husband, at the time of leaving his wife, as to his reasons for leaving, were competent and a part of the res gestae. In the case of Williams v. Williams, 20 Colo. 51, 37 Pac. 614, being a case for alienation very similar to this, the court said:

"It is a familiar rule that whenever it is proper to prove the doing of an act by a certain person, the declarations of such persons, accompanying the act and having reference thereto, are admissible in evidence as explanatory of the act itself. In this case it was shown that defendant took an active part in her son's affairs with reference to his property, his residence, and particularly with reference to his relations to his wife. It was proper, therefore, that his declarations concerning such conduct on his mother's part, and having reference to his separation or contemplated separation from his wife, should be submitted to the jury, for the purpose of enabling them, in connection with other evidence, to determine the cause or motive which prompted his separation from his wife. The trial court, in admitting such declarations, expressly limited them to such purpose. I Phil. Ev. 185-187; Baker v. Baker, 16 Abb. N. C. [N. Y.[ 302; 1 Greenl. Ev. §§ 108, 123; Rawson v. Haigh, 2 Bing. 99-104; Sessions v. Little, 9 N. H. 271; Tenney v. Evans, 14 N. H. 350 [40 Am. Dec. 194]."

In the case of Travelers' Ins. Co. v. Mosley, 75 U. S. (8 Wall.) 397, 19 L. Ed. 440, the court said:

"Wherever the bodily or mental feelings of an individual are material to be proved, the usual expressions of such feelings are original and competent evidence. Those expressions are the natural reflexes of what it might be impossible to show by other testimony. If there be such other testimony, this may be necessary to set the facts thus developed in their true light, and to give them their proper effect. As independent, explanatory, or corroborative evidence, it is often indispensable to the due administration of justice. Such declarations are regarded as verbal acts, and are as competent as any other testimony, when relevant to the issue. Their truth or falsity is an inquiry for the jury."

I am therefore of the view that the statements made by the husband in this case, at the time he was endeavoring to bring about a separation, and when the wife asked him why he acted as he did, were very proper testimony as explaining his conduct, and were the best proof as to what caused the injury to plaintiff. These statements of the husband were made at a time when the estrangement and alienation were occurring, and being exhibited, and did accompany the conduct of the husband which is a part of the res gestae. This point is sustained by section 1776, Wigmore, Ev. The case of Lund et al. v. Tynsborough, 9 Cush. (Mass.) 43, is directly in point. In that case the court said:

"Perhaps the most common and largest class of cases in which declarations are admissible is that in which the state of mind or motive with which any particular act is done is the subject of inquiry. Thus, where the question is as to the motives of a debtor in leaving his house and going and remaining abroad, so as to determine whether or not an act of bankruptcy has been committed, his declarations when leaving his house, and while remaining abroad, as to his motives for leaving his house and for remaining abroad, are admissible in evidence. Such declarations, accompanying the act, clearly belong to the res gestae. They are calculated to elucidate and explain the act, and they derive a degree of credit from the act."

There are numerous other decisions which sustain the admissibility of said evidence for the purpose of showing the cause that produced the injury complained of.

The respondent made out a good case, free from prejudicial error. The judgment appealed from should be affirmed.

SMITH, P. J.  I think the views of my majority Associates give a too restricted interpretation to the term res gestae, as applied to the facts in a case of this kind.  In such an action a desertion of the wife by the husband is merely a culmination of wrongful acts, and is not itself the ground of the action.  The vital question is whether the acts complained of caused or contributed to the loss of the husband's affections.  The desertion is, of course, competent evidence of the loss of conjugal affection, but the act of desertion is not the res gestae of the cause of action.  The alienation of the husband's affections, accomplished by wrongful acts of defendants, constitutes the res gestae of the cause of action, and in point of time includes the entire period of, and any and all wrongful acts which may have contributed to such alienation.

"The act done" is the final alienation of the husband's affections, which may have been caused, not by any single wrongful act, but by a whole course of wrongful conduct and numerous acts or statements covering a long period of time.  Such acts, no matter how extended the period of time covered, so long as they may have contributed the final result, constitute a part of the res gestae.  Declarations made "at the time of the act done," declarations made within the period of time covered by the process of alienation, are therefore res gestae, if they are such as to characterize and are calculated to unfold the nature of the ultimate fact, alienation, and are of such character as to explain and harmonize with and obviously constitute one complete transaction.

The letter referred to in the question alleged to be error, said:

"I don't mean a divorce as I never expect to get one and don't ask it, but think we had better sign papers of separation at once, as it will be better all around.  I can't explain at present what this is.  I wish I could."

The answer to the question asked the wife at the trial called for this deferred explanation, and she was permitted to give it.  The explanation as stated by her was that his parents (the defendants) had told him her little baby, just a few months old, was not his child; that he was not the father of the child.  Such a statement to him by his parents, if made, was a fact which explained and characterized his state of mind and feeling toward

his wife when he wrote the letter demanding a separation, and the explanation he gave her was just as competent as though he had written it into the letter. I do not see, therefore, how my Colleagues can say,

"There is nothing in the letter, however, that shows any loss of affection on the part of the husband, nor was there anything said or done by him during said conversation to indicate that he had lost confidence in her, or intended to abandon or desert her. So far as anything said to the plaintiff by her husband is concerned, the intention to abandon her was formed at some subsequent time, and for some cause other than that assigned by her. This being the case, the words attributed to him by plaintiff in answer to the question complained of did not accompany the act of abandoning her, nor constitute any part thereof, nor was it contemporaneous with that act."

The statement made to her was certainly competent evidence tending to show the state of the husband's mind when he wrote the letter, and there is nothing in the conversation testified to by her which tended to show any change in his attitude toward her. I am therefore of the view that such statement was contemporaneous with the act complained of—the alienation of the husband's affections—and was a part of the res gestae of the cause of action. In view of the fact that my majority Associates do not concur upon other phases of the case, I shall not discuss them.